UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI—EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN FLETCHER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH TOMLINSON, NICHOLAS | ) | Case No.: |
| MARTORANO, JOHN MOTON, | ) | |
| JONATHAN  CARROLL, CITY OF ST. LOUIS, | ) | |
| ST. LOUIS CITY METROPOLITAN | ) | |
| POLICE DEPARTMENT, BOARD OF POLICE | ) | |
| COMMISSIONERS, CORIZON, INC., | ) | |
| DR. JANE DOE, JANE DOE 1, JANE DOE 2, | ) | |
| JANE DOE 3, JANE DOE 4, JOHN DOE 1, and | ) | |
| JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

COMES NOW Plaintiff, Calvin Fletcher, Sr., by and through counsel, Bollwerk &

Tatlow, LLC, and states for his Complaint as follows:

**STATEMENT OF CLAIM**

1.      On March 6, 2013, Calvin Fletcher was brutally attacked by St. Louis City police

officers. The officers repeatedly shocked Calvin with a Taser and beat him, breaking several

bones in his face. The video cameras in a police van at the scene were deliberately turned off so

the attack would not be recorded on video. Though the officers claimed they suspected Calvin of

having a weapon and drugs on him, it is indisputable that Calvin had neither.

2.      Afterwards, Calvin was placed in the infirmary at the St. Louis City Justice

Center. During this time, Calvin was slowly dying as his kidneys were shutting down due to the

trauma of the police attack. Despite clear signs of severe kidney damage that was getting worse

by the day, the medical staff in the infirmary did nothing. They deliberately ignored Calvin's

1

serious medical needs, and they flippantly dismissed his frequent requests to go to the hospital.
Moreover, not only was Calvin injured and dying, he was totally isolated from the outside world.
He was never taken before a judge as required by law and, pursuant to St. Louis City policy,
Calvin had no right or ability to make a phone call to reach out to his loved ones.

3.      On March 12, 2013, Calvin was finally transferred to the Perry County Sheriff's
Office, which took Calvin to the emergency room that day. However, the Sheriff's Office failed
to take Calvin to a follow-up medical appointment to obtain MRIs on March 15, 2013. On March
19, 2013, Calvin suffered a seizure in which he vomited and lost consciousness.

4.      When finally released on March 19, 2013, Calvin's condition was grave. He
could barely move. After being taken to the emergency room again, he was diagnosed with post-
traumatic acute kidney failure. He had to be sent to St. Louis to receive life-saving dialysis. Had
he not finally received medical attention when he did, Calvin could have died. He has suffered
untold physical, mental, and emotional harm as a result of the Defendants' actions. He seeks
compensatory damages, punitive damages, penalties, costs, and attorneys' fees.

## JURISDICTION AND VENUE

5.      The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action
arises under the Constitution and laws of the United States. The Court also has supplemental
jurisdiction of Calvin's state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are so
related to the claims arising under federal law that they form part of the same case or controversy
under Article III of the United States Constitution.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that
all Defendants reside in this judicial district and a substantial part of the events and omissions
giving rise to this claim occurred in this district.

## PARTIES

7.      Calvin Fletcher is a 37 year-old African-American male residing in St. Louis, Missouri 63112. At the time of the events described herein, Calvin was 36 years old.

8.      Defendants Joseph Tomlinson, Nicholas Martoran, John Moton, and Jonathan Carroll were police officers with the St. Louis City Metropolitan Police Department at the time of the events described herein.

9.      Defendant the City of St. Louis is a municipality in Missouri.

10.      Defendant St. Louis City Metropolitan Police Department ("SLMPD") is a governmental entity responsible for providing police services for the City of St. Louis.

11.      Defendant Board of Police Commissioners is a governmental entity responsible for the effective operation of the SLMPD.

12.      Defendant Corizon, Inc. is a quasi-public entity hired by the City of St. Louis to provide medical care in its correctional facilities.

13.      Defendant Dr. Jane Doe is the physician responsible for overseeing the health care of Calvin while he was in custody at the St. Louis City Justice Center. Her name and identity are not yet known for certain, but she is believed to be Dr. Brenda Mallard, M.D. Her full name and identity will be reasonably obtainable through discovery.

14.      Defendant Jane Doe 1 is believed to be a female police officer with the SLMPD. Her full name and identity are not yet known but will be reasonably obtainable through discovery.

15.      Defendant Jane Doe 2 is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher as described herein. In records Plaintiff has obtained, she is only identified as "A. Scott, LPN," but her full name and identity will be reasonably obtainable

through discovery.

16.     Defendant Jane Doe 3 is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher during the day shift on March 10, 2013 as described herein. In records Plaintiff has obtained, her name is not clearly legible, but her full name and identity will be reasonably obtainable through discovery.

17.     Defendant Jane Doe 4 is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher during the evening shift on March 10, 2013 as described herein. In records Plaintiff has obtained, her name is not clearly legible, but her full name and identity will be reasonably obtainable through discovery.

18.     Defendant John Doe 1 is the individual at the Perry County Sheriff's Office who, on or about March 15, 2013, failed to transfer or inquire about transferring Calvin Fletcher to Perry County Memorial Hospital for a scheduled medical appointment to obtain MRIs of Calvin's brain and other party of his body. His full name and identity will be reasonably obtainable through discovery.

19.     Defendant John Doe 2 is the individual responsible for ensuring that the City of Louis complied with Missouri law by bringing Calvin Fletcher before a judge of the City of St. Louis as soon as practicable following his arrest. His full name and identity will be reasonably obtainable through discovery.

## FACTS

### *I.      The unlawful arrest.*

20.     On March 6, 2013, Calvin was walking North on 13th Street, at the Southwest corner of 13th Street and Cass Avenue. Three white male police officers—defendants Tomlinson, Martoran, and Moton—were parked in a police cruiser across the street at a Mobil

gas station. The officers saw Calvin walking. They would later claim they suspected Calvin of having a weapon because he adjusted his waistband. The officers chose to confront Calvin and question him about a weapon. It is indisputable that Calvin had no weapon on him of any kind.

21.     The officers left the Mobil gas station in their police cruiser and proceeded to park on Cass, in the crosswalk directly in front of Calvin. The officers quickly exited the car and moved toward Calvin. The officers would later claim Calvin threw to the ground a substance that appeared to be crack-cocaine. However, subsequent lab analysis of the alleged substance showed it was neither crack cocaine nor contained any other controlled substances. Thus, it is also indisputable that Calvin had no drugs on him of any kind.

22.     Calvin had existing warrants for his arrest stemming from traffic violations in the City of St. Louis and Perryville, Missouri. Afraid of being arrested, Calvin began to run, but took only a few steps before stopping, as one of the police officers tripped and fell to the ground. The officers were visibly angry. They knocked Calvin to the ground and immediately began punching, kicking, and hitting Calvin hard in the face and body with their hands, feet, batons, and other equipment. Calvin lay helpless on the ground as they attacked him for several minutes. At some point, one or both of Calvin's shoes came off, exposing his feet during the attack.

23.     The police officers then handcuffed Calvin. The handcuffs were so tight they left bruises and marks still visible many months after the incident. Though handcuffed and not resisting at all, the officers punched, kicked, and hit Calvin more. At one point, one of the officers removed a weapon that looked a like a gun, pointed it at Calvin, and fired. Calvin thought he was going to be shot.

24.     The weapon turned out to be a Taser or other electroshock weapon. The officers laughed as they repeatedly shocked Calvin, causing him extreme pain. At one point, the officer

firing the Taser had to change cartridges so he could continue electroshocking Calvin. At no

point did the officers warn Calvin they were going to use a Taser on him.

25.     Through his attorneys, Plaintiff has made multiple requests to the SLMPD and

the Board of Police Commissioners under Missouri's "Sunshine Law" for all of their records

concerning the use of a Taser on Calvin. The requests included the number of times the Taser

was fired, the time of each firing, the serial number of the Taser, the distance between the officer

and Calvin when it was fired, the locations of impact on Calvin, an evaluation of the

effectiveness of the use of the Taser, the "I/LEADS" report concerning the use of a Taser, the

initial review of the Taser deployment conducted by a supervisor, and a copy of the Critical

Incident Review conducted by the chain of command. The SLMPD and the Board of Police

Commissioners have not provided any response at all to Plaintiff's multiple requests,

demonstrating their intent to unlawfully withhold information from Calvin and frustrate his

ability to investigate and prove his claims or, possibly, to destroy relevant evidence in their

possession.

26.     Defendant Jonathan Carroll, another white male police officer, arrived at the

scene in a police van. The van contained two video cameras: the first recording the view through

the front windshield; and the second recording the view of the interior of the rear of the van

where prisoners are kept. SLMPD procedures required the van's cameras to be on and recording

at all times during the incident, as well as during the subsequent transportation of Calvin

Fletcher. As the van came to a stop, however, defendant Carroll deliberately turned off both of

the van's video cameras. The cameras would remain off during the entire incident in question,

recording nothing of the arrest and transportation of Calvin Fletcher. Defendant Carroll clearly

intended to prevent the cameras from recording the unlawful arrest and beating of Calvin

6

Fletcher.

27.     Other officers of an unknown number also arrived. Calvin was spat on. At one point, officer Jane Doe 1 put her foot on Calvin's neck while he was face down on the ground and handcuffed. They placed a black jacket in front of Calvin's head so he could not see what was happening.

28.     Calvin was terrified. He had been beaten repeatedly and shot with an electroshock weapon. He was in terrible pain and he could barely move. He was handcuffed, lying prone and helpless on the ground. When the officers seemed to block any view of Calvin by passersby, Calvin was afraid they were going to shoot and kill him. Calvin wet his pants out of fear for his life.

29.     The officers grabbed Calvin and placed him in the back of the police van so that, while his body was in the van, Calvin's head was between the door and doorframe. Again, the officers punched and hit Calvin with their hands and equipment. They again used the Taser to electroshock him. The officers then slammed the door hard on Calvin's head and face. Since Officer Carroll had deliberately turned off the van's cameras, none of this was captured on video.

30.     In their official incident report, the police officers admitted to beating Calvin with a baton, shooting him with a Taser at least two times, and handcuffing him. Despite having been beaten, electroshocked multiple times, and handcuffed, the officers claim Calvin continued to resist arrest, including trying to drag all three officers to the ground, climb over car seats, slip handcuffs under his legs to the front of his body, and kick Defendant Martorano. In reality, other than beginning to run when first being confronted by the officers, Calvin in no way resisted arrest at any time, nor could he have. Rather, Calvin was completely incapacitated, as he had been brutally assaulted and battered, handcuffed, and electroshocked by four angry police

7

officers that made him afraid for his life.

31.     In their paperwork, the officers also claimed Calvin sustained only a "minor cut to his forehead." In reality, the officers hit Calvin so hard they broke numerous bones in his face, including his nose, his left cheek bone, his left maxillary sinus in three places, his inferior and medial left maxilla, his left temporal bone, and his left temporomandibular joint. They also gave Calvin a cerebellar hematoma and contusions to his scalp, face, arms, chest, and legs. They further either caused a cerebellar cavernoma to form or caused an asymptomatic cavernoma to become symptomatic.

32.     The police officers also claimed in their report that Calvin resisted arrest, assaulted the police officers, and was in possession of crack cocaine. However, no charges were ever brought against Calvin for any crime and, as described earlier, it is indisputable that Calvin was not in possession of any drugs or weapons when he was arrested.

## II.     *The detention, medical neglect, and isolation.*

33.     After Calvin was beaten by the police officers, he was transferred to the St. Louis City Justice Center in downtown St. Louis. He would remain there until March 12, 2013. Upon his arrival, Calvin was unable to walk and in terrible pain all over his body. The Defendant police officers grabbed Calvin by the arms and literally dragged him into the Justice Center as his feet scraped against the ground. Due to the police battery and being dragged by the police officers, three of Calvin's toenails eventually fell off completely.

34.     During his stay at the Justice Center, Calvin had to be transported by wheelchair at all times. He was ultimately placed in the infirmary, managed and controlled by defendant Corizon, Inc., and under the care and supervision of Dr. Jane Doe. Upon arrival, a nurse—Jane Doe 2—completed a health screening for Calvin. At that time, Calvin asked to go to the hospital.

Jane Doe 2 denied his request. Everyday thereafter, Calvin asked to go to the hospital or see a doctor. His requests were always denied.

35.     The medical staff gave Calvin large doses of Tylenol, which can cause severe kidney problems. Instead of improving, Calvin felt like his pain and his condition were getting worse. He was in terrible physical and emotional shock from the police assault, he was not drinking well, he went very long periods without urinating, his urine became dark, he was eating very little, and he developed terrible pain in his kidneys. These are signs of severe kidney damage.

36.     The medical staff was aware of all of these problems. On or about March 10, 2013, Jane Doe 3, the day shift nurse, and Jane Doe 4, the evening shift nurse, each noted that Calvin was experiencing "kidney" pain and ate less than half of his meals. Jane Doe 3 further noted that Calvin reported decreased urination with pain. Jane Doe 2, the night shift nurse on or about March 10, 2013, noted that Calvin's kidney pain had increased from 4/10 during the day shift, to 5/10 during the evening shift, to 10/10 during the night shift. Upon information and belief, Dr. Jane Doe knew of Calvin's condition after having reviewed his records and/or been orally informed of them by Jane Doe 2, Jane Doe 3, Jane Doe 4, and/or other nurses who provided care to Calvin Fletcher in the infirmary.

37.     Calvin's serious medical needs were ignored. Dr. Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4 failed to order appropriate any diagnostic tests or treatment in response to clear signs and symptoms of severe kidney damage and post-traumatic kidney failure. They failed to change Calvin's medications so he would not be taking large doses of potentially kidney-damaging Tylenol. The only diagnostic test ever performed on Calvin at the Justice Center was a chest x-ray, apparently for the purpose of determining if Calvin's ribs were broken.

However, the medical staff never even told Calvin the results of the x-ray.

38.    On or about March 10, 2013, Calvin again asked Jane Doe 2 if he could go to the hospital. The pain in his kidneys had become excruciating. Jane Doe 2 told Calvin that he had refused to go to the hospital when he first arrived, and that now it was too late to do so. This upset Calvin. No one had ever offered to take him to the hospital, and he never refused to go. Jane Doe 2 laughed at Calvin and flippantly told him again he could not go to the hospital because he was "crazy." This was extremely upsetting to Calvin.

39.    Calvin also repeatedly asked to make a phone call so he could call his family and tell them where he was and what happened to him. However, as a non-inmate, Calvin had no right to make a phone call, since an inmate number was required to make a call. Calvin's family was afraid, as they did not hear from Calvin for many days and had no idea what happened to him. During this time, Calvin was completely isolated from the outside world and had no way of reaching out to anyone, further causing him great distress.

40.    Moreover, during his confinement at the St. Louis City Justice Center, Calvin was never provided a court hearing of any kind nor otherwise taken before a Judge. He had no idea what the situation was, how long he would be confined, or when he would ever be allowed to leave.

### III.    *Further detention and medical neglect at the Perry County Sheriff's Office.*

41.    On March 12, 2013, Calvin was transferred from the St. Louis City Justice Center to the Perry County Sheriff's Office, where Calvin also had warrants for traffic violations. When he was booked, Calvin asked to be taken to the hospital. Calvin was transported to the emergency room at Perry County Memorial Hospital on March 12, 2013.

42.    At the hospital, x-rays were taken of Calvin's wrists, ribs, and chest, and a

computed tomography ("CT") scan was taken of his head. The CT scan revealed a cerebellar hematoma or calcification, as well as a left zygomatic arch fracture. Upon discharge, Calvin was given instructions to obtain an appointment if not improving a day after his discharge, given an appointment to obtain MRIs of his brain and other parts of his body on March 15, 2013, and given an appointment to see a physician on March 25, 2013.

43.     After the hospital, Calvin was returned to a regular jail cell. Calvin continued to complain of pain to the officers and guards he came into contact with. On the day of his follow-up appointment, Calvin told John Doe 1 he needed to be taken to the hospital for a follow-up medical appointment to obtain an MRI. Though the Sheriff's Department was in possession of the appointment reminder, John Doe 1 denied knowledge of such an appointment, and Calvin was not transferred to the hospital for his follow-up appointment and MRIs on March 15, 2013, and neither was a new appointment made for him on March 13, 2013, even though his symptoms had not improved.

44.     During this entire time, Calvin's health continued to deteriorate. He became dependent upon his cellmates to get him his food and pain medications. On March 19, 2013, Calvin suffered a seizure in which he vomited and lost consciousness. No medical care was provided to Calvin. Instead, the officers told Calvin he might have to stay in jail another week if he received immediate medical attention. Hoping to avoid that, Calvin chose to go before the judge on March 19, 2013. Calvin was initially sentenced to 11 days in jail and asked the judge for medical care, but the judge stated he was not in charge of medical care and could not help Calvin.

45.     When Calvin arrived back at the jail, expecting to be there four more days, he was unexpectedly told he would be released that day. Upon his release, Calvin was left in the lobby

11

of the jail, unable to walk. He asked staff to call him a cab. Instead, an officer drove him to Perry County Memorial Hospital, charging Calvin $17.50 for the ride.

### IV.      *Hospitalization and aftermath.*

46.     At the emergency room, diagnostic tests revealed Calvin's kidneys had shut down and he was suffering from acute kidney failure. Further testing later on would show Calvin was suffering from numerous other conditions, including interstitial nephritis, hyperkalemia, tertiary hyperparathryroidism, monoclonal gammopathy, anuria, and encephalopathy. Unable to effectively treat Calvin's serious condition, Perry County Memorial Hospital transferred Calvin to Saint Louis University Hospital, where he underwent life-saving dialysis. Calvin was hospitalized until April 3, 2013.

47.     As a result of the police assault and subsequent medical neglect, Calvin has suffered substantial physical and emotional trauma. He has already incurred medical bills over $150,000, and he will continue to incur additional care in the future of an unknown amount. He has suffered seizures, headaches, confusion, dizziness, vomiting, suicidal thoughts, and depression. His ability to enjoy life has been irreparably altered. He has brought this lawsuit to redress the harms that have been done to him.

### COUNT 1:
### Violations of Plaintiff's Fourth Amendment Rights, Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 1 against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis ("Count 1 Defendants"):

48.     All preceding paragraphs are re-alleged and incorporated herein.

49.     On or about March 6, 2013, defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, under color of state law as City of St. Louis police officers, subjected Calvin

Fletcher to, or caused Calvin Fletcher to be subjected to, the deprivation of his Fourth Amendment right under the United States Constitution to be free from unreasonable seizures of his person and the use of excessive force.

50.     Upon information and belief, the officers were deliberately acting in accordance with a City of St. Louis pattern, practice, or custom of using excessive force during the arrest of individuals, including: hitting, kicking, punching, and/or tasing individuals after they have already been handcuffed and/or incapacitated; tasing individuals without verbal warning; and excessively tasing individuals.

51.     Upon information and belief, the officers were also deliberately acting in accordance with a City of St. Louis pattern, practice, or custom of switching off in-vehicle video cameras during unlawful arrests and the transportation of individuals unlawfully arrested.

52.     As a direct and proximate result of the violent attack, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

53.     The conduct of the Count 1 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

54.     To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages

against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis in amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, for injunctive relief against the City of St. Louis barring it from encouraging, requiring, or permitting its police force to engage in unlawful patterns and practices as described herein, and for such other legal or equitable relief the Court deems appropriate.

<u>**COUNT 2:**</u>
<u>**Conspiracy to Violate Plaintiff's Fourth Amendment Rights Pursuant to 42 U.S.C. § 1983**</u>

COMES NOW Plaintiff, and states as follows for his Count 2 against defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 ("Count 2 Defendants"):

55. All preceding paragraphs are re-alleged and incorporated herein.

56. The Count 2 Defendants reached a mutual understanding and conspired with each other to violate Plaintiff's civil rights. In furtherance of this conspiracy, the Count 2 Defendants committed several overt acts including, but not limited to, the following:

a. They physically hit, punched, kicked, spat on, electroshocked, and otherwise physically assaulted and battered Calvin Fletcher;

b. They failed to prevent or stop the physical assault and battery of Calvin Fletcher;

c. They failed to warn Calvin prior to the use of a Taser on him;

d. They tased Calvin when it was not reasonably necessary to do so, as Calvin was already incapacitated and not physically resisting;

e. They tased Calvin more times and for a greater duration than reasonably necessary or permissible under SLMPD procedures;

f. Defendant Carroll intentionally turned off all video cameras in the police van he drove to the scene—a clear violation of police procedures—for the purpose

14

of concealing the Count 2 Defendants' illegal arrest and beating of Calvin
Fletcher;

    g.   They created an incident report in which they falsely claimed they suspected
Calvin of having a weapon because he adjusted his waistband, for the purpose
of supplying themselves with a justifiable excuse for stopping Calvin, and for
the purpose of portraying Calvin in a false and negative light;

    h.   They planted false evidence—the purported "crack cocaine" that in fact
contained no controlled substances—for the purpose of bringing false charges
against Calvin Fletcher and supplying themselves with a justifiable excuse for
arresting and physically attacking Calvin, and for the purpose of portraying
Calvin in a false and negative light;

    i.   They agreed to file an incident report in which they falsely claimed that
Calvin Fletcher assaulted the police officers; and

    j.   They agreed to file a report in which they falsely claimed that Calvin Fletcher
sustained only a minor cut to his forehead, when they knew he had sustained
more substantial injuries.

57.    As a direct and proximate result of the conspiracy between the defendant police
officers, Calvin Fletcher was unreasonably seized in violation of his rights under the Fourth and
Fourteenth Amendments to the United States Constitution, which are protected under 42 U.S.C.
§ 1983.

58.    As a direct and proximate result of the conspiracy and violent attack by the
Count 2 Defendants, Calvin Fletcher suffered numerous serious injuries as described herein,
including, but not limited to, acute kidney failure, multiple broken bones in his face, a

hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial

pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care

exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with

greater specificity.

59.     The conduct of the Count 2 Defendants was intentional, outrageous, and

demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus

entitling Calvin to punitive damages.

60.     To the extent Calvin Fletcher prevails in the instant case, he is entitled to an

award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages

against defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 in amount that is fair

and reasonable, for punitive damages, costs, and attorneys' fees, and for such other legal or

equitable relief the Court deems appropriate.

## COUNT 3:
## Assault Under Missouri Law

COMES NOW Plaintiff, and states as follows for his Count 3 against defendants

Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis:

61.     All preceding paragraphs are re-alleged and incorporated herein.

62.     On or about March 6, 2013, defendants Tomlinson, Martorano, Moton, Carroll,

and Jane Doe 1:

     a.   Intended to cause bodily harm or offensive contact to Calvin Fletcher, or the

         apprehension thereof by Calvin Fletcher, by moving their arms, hands, feet,

         and equipment as if to strike Calvin Fletcher; and

     b.   Calvin Fletcher apprehended bodily harm or offensive contact from the

defendants' arms, hands, feet, and equipment, as Calvin saw them striking him.

63.     As a direct and proximate result of the violent assault, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

64.     The conduct of defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

65.     The City of St. Louis is vicariously liable for the assault, as defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1committed such acts in order to facilitate an arrest falling within the scopes of their authority and employment as police officers in the SLMPD, and such acts are fairly and naturally incident to the business and activities of the City of St. Louis and the SLMPD, given the City of St. Louis' patterns, practices, and customs.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis in amount that is fair and reasonable, for punitive damages, and for such other legal or equitable relief the Court deems appropriate.

## COUNT 4:
## Battery Under Missouri Law

COMES NOW Plaintiff, and states as follows for his Count 4 against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis:

66.     All preceding paragraphs are re-alleged and incorporated herein.

67.     On or about March 6, 2013, the defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 intentionally caused an offensive and/or harmful contact with Calvin Fletcher's person, as they used their hands, feet, and equipment to punch, kick, hit, and electroshock Calvin in his head, face, and body.

68.     As a direct and proximate result of the violent battery by defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

69.     The conduct of defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

70.     The City of St. Louis is vicariously liable for the battery, as defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1committed such acts in order to facilitate an arrest falling within the scopes of their authority and employment as police officers in the SLMPD, and such acts are fairly and naturally incident to the business and activities of the City of St. Louis and the SLMPD, given the City of St. Louis' patterns, practices, and customs.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, and the City of St. Louis in amount that is fair and reasonable, for punitive damages, and for such other legal or equitable

relief the Court deems appropriate.

## COUNT 5:
## Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 5 against defendants

Corizon, Inc., Dr. Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4 ("Count 5 Defendants"):

71.     All preceding paragraphs are re-alleged and incorporated herein.

72.     While in the St. Louis City Justice Center's infirmary, Calvin Fletcher's

complaints and conditions clearly indicated he was at serious risk of developing, or having

already developed, acute kidney failure or other serious kidney damage. These complaints and

conditions included, but were not limited to, having suffered serious physical trauma as the result

of a police assault and battery, severe emotional shock and trauma from the police assault,

drinking very little, eating very little, not urinating or having bowel movements, going very long

periods without urinating or having bowel movements, urine becoming dark in color, and

developing terrible kidney pain.

73.     The members of the medical staff were aware of all of these problems and of

Calvin's numerous and frequent requests to go to the hospital. On or about March 10, 2013, Jane

Doe 3, the day shift nurse, and Jane Doe 4, the evening shift nurse, each noted that Calvin was

experiencing "kidney" pain and ate less than half of his meals. Jane Doe 3 further noted that

Calvin reported decreased urination with pain. Jane Doe 2, the night shift nurse on or about

March 10, 2013, noted that Calvin's kidney pain had increased from 4/10 during the day shift, to

5/10 during the evening shift, to 10/10 during the night shift.

74.     Upon information and belief, Dr. Jane Doe knew of Calvin's condition after

having reviewed his records and/or been orally informed of them by Jane Doe 2, Jane Doe 3,

Jane Doe 4, and/or other nurses, who provided care to Calvin Fletcher in the infirmary.

19

75.     In response, the Defendants Dr. Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4 should have done the following, but did not do so: recognize the situation as a potential medical emergency; provide emergency care or treatment; discover or diagnose Calvin's condition; have a physician examine Calvin and his records to evaluate his condition and determine the appropriate course of diagnosis or treatment, or whether a referral to another facility was appropriate; prioritize Calvin's progressively disabling condition over other inmates or non-emergency procedures; give Calvin appropriate diagnostic tests or treatment; take Calvin to a hospital; or otherwise refer Calvin to an outside facility for appropriate diagnostic tests or treatment.

76.     Upon information and belief, Defendant Corizon, Inc., instituted a policy or practice in the infirmary at the St. Louis City Justice Center to prohibit or prevent referrals to outside care for the purpose of lowering costs and making more money due to a captitated payment structure with the City of St. Louis. Defendants Dr. Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4 were complying with this policy or practice when denying appropriate referrals to outside care for Calvin Fletcher.

77.     Accordingly, under the color of state law as local entities authorized and required to provide medical care to inmates and detainees at the St. Louis City Justice Center, the Count 5 Defendants subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a deliberate indifference to his serious medical needs, in violation of his Fourteenth Amendment rights to due process of law and to be free of punishment prior to adjudication of guilt.

78.     As a direct and proximate result of the Count 5 Defendants' deliberate indifference to his serious medical needs, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar

cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

79.     The conduct of the Count 5 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

80.     To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Corizon, Inc., Dr. Jane Doe, Jane Doe 2, Jane Doe 3, and Jane Doe 4 in amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, for injunctive relief against Corizon, Inc. barring it from encouraging, requiring, or permitting the medical staff at the St. Louis City Justice Center to engage in unlawful policies or practices as described herein, and for such other legal or equitable relief the Court deems appropriate.

## COUNT 6:
## Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 6 against defendant The City of St. Louis, the SLMPD, and the Board of Police Commissioners ("Count 6 Defendants"):

81.     All preceding paragraphs are re-alleged and incorporated herein.

82.     In the St. Louis City Justice Center's infirmary, only inmates with inmate numbers are permitted to make telephone calls. Calvin Fletcher was not an inmate and had no inmate number, and was thus prohibited from making any telephone calls. He was locked away, slowly dying as the result of a brutal police assault and medical neglect, and the Count 6 Defendants' policy prevented him from being able to contact anyone in the outside world,

including his family, for many days.

83.      Under color of state law as a municipality authorized to detain and house prisoners, the Count 6 Defendants' policy of allowing phone calls for inmates, but denying phone calls to non-inmates, lacks any reasonable basis, does not reasonably or substantially further any reasonable or compelling government interest, and thus subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a violation of his 14th Amendment right to the equal protection of the law.

84.      As a direct and proximate result of the Count 6 Defendants' phone policies, Calvin suffered severe mental and emotional trauma due to his total isolation and inability to contact his family or seek help of any kind for many days.

85.      The conduct of the Count 6 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

86.      To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants the City of St. Louis, the SLMPD, and the Board of Police Commissioners, in amount that is fair and reasonable, for punitive damages, for an injunction barring these Defendants from applying an unequal and unlawful phone policy in the future, for costs, and attorneys' fees, and for such other legal or equitable relief the Court deems appropriate.

## COUNT 7:
## False Imprisonment Under Missouri Law

COMES NOW Plaintiff, and states as follows for his Count 7 against defendants John Doe 2 and the City of St. Louis:

87.     All preceding paragraphs are re-alleged and incorporated herein

88.     Between his arrest on or about March 6, 2013, and his transfer from the St. Louis City Justice Center on or about March 12, 2013, Calvin Fletcher was confined by the City of St. Louis in the infirmary.

89.     Missouri Rule of Criminal Procedure 21.09 states that, "A person arrested under a warrant for any misdemeanor shall be brought as soon as practicable before a judge of the court from which the warrant was issued." Despite being arrested under a warrant for a traffic misdemeanor or infraction from the City of St. Louis, Calvin was not brought as soon as practicable before a judge of the City of St. Louis.

90.     Accordingly, the City of St. Louis and John Doe 2 confined Calvin Fletcher, without legal justification, by violating Rule 21.09 and failing to ever take Calvin before a judge, despite it being practicable to do so on multiple occasions.

91.     Upon information and belief, John Doe 2 was acting in accordance with a policy or practice of the City of St. Louis to:

      a.  Confine and isolate individuals who have been beaten by SLMPD police officers until their injuries heal and/or appear less severe; and/or

      b.  Fail to take persons arrested under a warrant for a misdemeanor before a judge as soon as practicable.

92.     As a direct and proximate result of the false imprisonment, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be

pled with greater specificity.

93.     The conduct of the City of St. Louis and John Doe 2 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants the City of St. Louis and John Doe 2 in amount that is fair and reasonable, for punitive damages, and for such other legal or equitable relief the Court deems appropriate.

## COUNT 8:
## Violation of Missouri's Public Records Law

COMES NOW Plaintiff, and states as follows for his Count 8 against defendants the SLMPD and the Board of Police Commissioners ("Count 8 Defendants"):

94.     All preceding paragraphs are re-alleged and incorporated herein.

95.     The Count 8 Defendants are administrative or governmental entities created by the constitution or statutes of Missouri, by order or ordinance of any political subdivision or district, or by executive order. Thus, pursuant to Rev. Stat. Mo. § 610.010(4), SLMPD and Board of Police Commissioners are "public governmental bodies" subject to Chapter 610 of the Revised Statutes of Missouri.

96.     Through his counsel, Calvin Fletcher made a request for public records pursuant to Chapter 610 of the Revised Statutes of Missouri to SLMPD on or about May 15, 2013. This request included the following:

   a. "10. All records describing any policies, procedures, or practices that govern are or otherwise followed with respect to: . . . b. The use of a 'taser,' pepper spray, or similar incapacitating products during an arrest;"

   b. "12. A complete copy of all other records documenting or created pursuant to

24

Mr. Fletcher's arrest, confinement, transportation, and/or release;" and

   c. "13. A complete copy of any other records contained in any physical or electronic file pertaining to Mr. Fletcher."

97.    On or about August 28, 2013 and September 16, 2013, the Count 8 Defendants provided certain information, including the procedures concerning the use of a Taser. Upon review of those procedures, it was discovered that Count 8 Defendants should also have been in possession of numerous other records concerning the use of a Taser on Mr. Fletcher. Accordingly, on February 17, 2014, Plaintiff's counsel sent a follow-up letter specifically requesting the following records:

   a. All "After Firing Identification Dots" ("AFIDs") generated as a result of the use of the Taser;

   b. All cartridge packs used;

   c. All information downloaded from the Taser describing the time and date of each time the Taser was fired;

   d. The initial review of the Taser deployment conducted by a supervisor;

   e. The "I/LEADS" report concerning the use of a Taser;

   f. A copy of the report including the following information: the serial number of the Taser unit used; the distance between the officer and Mr. Fletcher at the time it was fired; the locations of impact on Mr. Fletcher; and an evaluation of the effectiveness of the device on Mr. Fletcher; and

   g. A copy of the Critical Incident Review conducted by the chain of command.

98.    Plaintiff initially received no response at all to his request. So, on April 2, 2014, Plaintiff's counsel again sent a follow-up request asking the Count 8 Defendants to, as soon as

possible, provide the information requested or identify when it would be provided. Again, Plaintiff received no response.

99.     On April 14, 2014, Plaintiff's counsel sent an email to SLMPD Paralegal Bridget Yates requesting assistance in obtaining information responsive to the request. Again, Plaintiff received no response.

100.    Plaintiff has never received a response of any kind from the Count 8 Defendants concerning the information, which fell under general requests for information mailed on or about May 15, 2013, and which was specifically requested on or about February 17, 2014.

101.    The Count 8 Defendants knowingly and purposely denied Calvin Fletcher access to the information he was lawfully entitled to, and failed to provide any response at all to his requests, in order to frustrate Calvin's attempt to pursue a legal action against SLMPD and its officers.

102.    Pursuant to Rev. Stat. Mo. §§ 610.027.3 and 610.027.4, Calvin Fletcher is entitled to a civil penalty of up to $5,000, plus all costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff respectfully asks the Court to award him a civil penalty of $5,000, costs, attorneys' fees, and such other legal or equitable relief the Court deems appropriate.

## COUNT 9:
## Violation of Missouri's Public Records Law

COMES NOW Plaintiff, and states as follows for his Count 9 against defendant Corizon, Inc.:

103.    All preceding paragraphs are re-alleged and incorporated herein.

104.    Corizon, Inc. is a corporation authorized to do business in Missouri pursuant to the provisions of Chapter 352, 353, or 355 of the Revised Statutes of Missouri. Corizon's

primary purpose is to enter into contracts with public governmental bodies to provide healthcare

services in correctional facilities, or to engage primarily in activities carried out pursuant to an

agreement or agreements with public governmental bodies, including the provision of healthcare

services in correctional facilities. Thus, pursuant to Rev. Stat. Mo. § 610.010(4)(f), Corizon is a

"quasi-public governmental body" that falls under the definition of a "public governmental

body" subject to Chapter 610 of the Revised Statutes of Missouri.

105.    Through his counsel, Calvin Fletcher made a request for public records pursuant

to Chapter 610 of the Revised Statutes of Missouri to Corizon, Inc. on or about October 9, 2013.

This request included the following:

a.  "2. The name, position, salary, length of service, and qualifications of each

health care professional providing services to Mr. Fletcher or otherwise

responsible for overseeing, directing, or supervising the provision of health

care services to confined persons"; and

b.  "5. All records describing any policies, procedures, or practices that govern

are or otherwise followed with respect to: . . . b. The provision of health care

to individuals in custody, including but not limited to the disclosure of health

information to confined persons, referrals to outside care, the provision of

medication, the use of diagnostic testing, the taking of photographs of injuries,

and the qualifications of health care professionals providing health care.

106.    On or about November 4, 2013, a representative from the legal department of

Corizon, Inc. told Calvin's counsel that, though Corizon had information responsive to requests

2. or 5.b., Corizon would not be providing it, believing that Corizon was exempt from providing

the information. At the request of Calvin's counsel, Corizon agreed to look into the matter

further and, to the extent they refused to provide information in response to requests 2. and 5.b.,

to provide a written denial stating the legal grounds therefor.

107.     On or about November 25, 2014, Corizon provided a partial response to Calvin's

request for public records, but did not provide any information in response to requests 2. or 5.b.,

and did not provide any written statement of the grounds for such denial, in violation of Rev.

Stat. Mo. § 610.023.

108.     Corizon knowingly and purposely denied Calvin Fletcher access to the

information he was lawfully entitled to, and failed to provide any written statement of the

grounds for the denial, in order to frustrate Calvin's attempt to pursue a legal action against

Corizon and its medical staff.

109.     Pursuant to Rev. Stat. Mo. §§ 610.027.3 and 610.027.4, Calvin Fletcher is

entitled to a civil penalty of up to $5,000, plus all costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff respectfully asks the Court to award him a civil penalty of up to

$5,000, costs, attorneys' fees, and such other legal or equitable relief the Court deems

appropriate.

### COUNT 10:
### Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 10 against defendant John

Doe 1:

110.     All preceding paragraphs are re-alleged and incorporated herein.

111.     Plaintiff had an appointment at Perry County Memorial Hospital to obtain MRIs

of the brain and other parts of his body on or about March 15, 2013. Though the Perry County

Sheriff's Office had the paperwork confirming this, and though John Doe 1 was made aware of

the appointment by Calvin Fletcher, John Doe 1 denied knowledge of the appointment, failed to

make appropriate inquiries into the existence and time of the appointment, and failed to ensure Calvin was transported to his scheduled appointment for his serious medical condition.

112.     Accordingly, under the color of state law as an officer of the Perry County Sheriff's Office, John Doe 1 subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a deliberate indifference to his serious medical needs, in violation of his Fourteenth Amendment rights to due process of law and to be free of punishment prior to adjudication of guilt.

113.     As a direct and proximate result of John Doe 1's deliberate indifference to Calvin Fletcher's serious medical needs, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

114.     The conduct of John Doe 1 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

115.     To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendant John Doe 1 in amount that is fair and reasonable, for punitive damages, costs, attorneys' fees, and for such other legal or equitable relief the Court deems appropriate.

Respectfully submitted,


//S// Jeffrey A. Herman
Jeffrey A. Herman, #62941MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO  63122
(314) 315-8111
(314) 315-8113
jah@bollwerktatlow.com


//S// Phillip A. Tatlow
Phillip A. Tatlow, #12687MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO  63122
(314) 315-8111
(314) 315-8113
pat@bollwerktatlow.com