UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI—EASTERN DIVISION

| | |
|---|---|
| CALVIN FLETCHER, SR.,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH TOMLINSON, NICHOLAS MARTORANO, JOHN MOTON, JONATHAN CARROLL, CITY OF ST. LOUIS, ST. LOUIS CITY METROPOLITAN POLICE DEPARTMENT, BOARD OF POLICE COMMISSIONERS, RICHARD GRAY (in his capacity as a police commissioner), THOMAS IRWIN (in his capacity as a police commissioner), ERWIN SWITZER (in his capacity as a police commissioner), BETTYE BATTLE-TURNER (in her capacity as a police commissioner), FRANCIS SLAY (in his capacity as a police commissioner), CORIZON, INC., PAUL GEIGER, JANE DOE 1, APRIL SCOTT, RHALASHONDRA STRAUGHTER, JOYCE SANCHEZ, and BLAKE LEADBETTER,<br><br>Defendants. | Case No.: 4:14-cv-999-RLW |

**SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff, Calvin Fletcher, Sr., by and through counsel, Bollwerk & Tatlow, LLC, and states for his Second Amended Complaint as follows:

**STATEMENT OF CLAIM**

1. On March 6, 2013, Calvin Fletcher was brutally attacked by St. Louis City police officers. The officers repeatedly shocked Calvin with a Taser and beat him, breaking several bones in his face. The video cameras in a police van at the scene were deliberately turned off so the attack would not be recorded on video. Though the officers claimed they suspected Calvin of having a weapon and drugs on him, it is indisputable that Calvin had neither.

2. Afterwards, Calvin was placed in the infirmary at the St. Louis City Justice Center. During this time, Calvin was slowly dying as his kidneys were shutting down due to the trauma of the police attack. Despite clear signs of severe kidney damage that was getting worse by the day, the medical staff in the infirmary did nothing. They deliberately ignored Calvin's serious medical needs, and they flippantly dismissed his frequent requests to go to the hospital. Moreover, not only was Calvin injured and dying, he was totally isolated from the outside world. He was never taken before a judge as required by law and, pursuant to St. Louis City policy, Calvin had no right or ability to make a phone call to reach out to his loved ones.

3. On March 12, 2013, Calvin was finally transferred to the Perry County Sheriff's Office, which took Calvin to the emergency room that day. However, the Sheriff's Office failed to take Calvin to a follow-up medical appointment to obtain MRIs on March 15, 2013. On March 19, 2013, Calvin suffered a seizure in which he vomited and lost consciousness.

4. When finally released on March 19, 2013, Calvin's condition was grave. He could barely move. After being taken to the emergency room again, he was diagnosed with post-traumatic acute kidney failure. He had to be sent to St. Louis to receive life-saving dialysis. Had he not finally received medical attention when he did, Calvin could have died. He has suffered untold physical, mental, and emotional harm as a result of the Defendants' actions. He has brought actions for violations of his civil rights, for assault and battery, for false imprisonment, and for violation of his right to receive public records. He seeks compensatory damages, punitive damages, penalties, costs, and attorneys' fees.

## JURISDICTION AND VENUE

5. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. The Court also has supplemental

jurisdiction of Calvin's state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are so related to the claims arising under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that all Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to this claim occurred in this district.

**PARTIES**

7. Calvin Fletcher is a 37 year-old African-American male residing in St. Louis, Missouri 63112. At the time of the events described herein, Calvin was 36 years old.

8. Defendants Joseph Tomlinson, Nicholas Martoran, John Moton, and Jonathan Carroll were police officers with the St. Louis City Metropolitan Police Department at the time of the events described herein.

9. Defendant the City of St. Louis is a municipality in Missouri, which owns and operates the St. Louis City Justice Center. Upon information and belief, the City of St. Louis has purchased liability insurance for tort claims made against it, and has thus waived sovereign immunity pursuant to Rev. Stat. Mo. § 537.610.

10. Defendant St. Louis City Metropolitan Police Department ("SLMPD") is a governmental entity responsible for providing police services for the City of St. Louis.

11. Defendant Board of Police Commissioners is a governmental entity responsible for the effective operation of the SLMPD.

12. Defendants Richard Gray, Thomas Irwin, Erwin Switzer, Bettye Battle-Turner, and Francis Slay serve as police commissioners on the Board of Police Commissioners, and they are sued in their capacity as such.

13. Defendant Corizon, Inc. is a quasi-public entity hired by the City of St. Louis to provide medical care in its correctional facilities.

14. Defendant Dr. Paul Geiger is the physician responsible for overseeing the health care of Calvin while he was in custody at the St. Louis City Justice Center.

15. Defendant Jane Doe 1 is believed to be a female police officer with the SLMPD. Her full name and identity are not yet known but will be reasonably obtainable through discovery.

16. Defendant April Scott is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher as described herein.

17. Defendant Rhalashondra Straughter is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher during the day shift on March 10, 2013 as described herein.

18. Defendant Joyce Sanchez is a nurse at the St. Louis City Justice Center who provided care to Calvin Fletcher during the evening shift on March 10, 2013 as described herein. In records Plaintiff has obtained, her name is not clearly legible, but her full name and identity will be reasonably obtainable through discovery.

19. Defendant Blake Leadbetter is the individual at the Perry County Sheriff's Office who, on or about March 15, 2013, failed to transfer or inquire about transferring Calvin Fletcher to Perry County Memorial Hospital for a scheduled medical appointment to obtain MRIs of Calvin's brain and other party of his body. His full name and identity will be reasonably obtainable through discovery.

## FACTS

### ***I. The unlawful arrest.***

20. On March 6, 2013, Calvin was walking North on 13th Street, at the Southwest

corner of 13th Street and Cass Avenue. Three white male police officers—defendants Tomlinson, Martoran, and Moton—were parked in a police cruiser across the street at a Mobil gas station. The officers saw Calvin walking. They would later claim they suspected Calvin of having a weapon because he adjusted his waistband. The officers chose to confront Calvin and question him about a weapon. It is indisputable that Calvin had no weapon on him of any kind.

21. The officers left the Mobil gas station in their police cruiser and proceeded to park on Cass, in the crosswalk directly in front of Calvin. The officers quickly exited the car and moved toward Calvin. The officers would later claim Calvin threw to the ground a substance that appeared to be crack-cocaine. However, subsequent lab analysis of the alleged substance showed it was neither crack cocaine nor contained any other controlled substances. Thus, it is also indisputable that Calvin had no drugs on him of any kind.

22. Calvin had existing warrants for his arrest stemming from traffic violations in the City of St. Louis and Perryville, Missouri. Afraid of being arrested, Calvin began to run, but took only a few steps before stopping, as one of the police officers tripped and fell to the ground. The officers were visibly angry. They knocked Calvin to the ground and immediately began punching, kicking, and hitting Calvin hard in the face and body with their hands, feet, batons, and other equipment. Calvin lay helpless on the ground as they attacked him for several minutes. At some point, one or both of Calvin's shoes came off, exposing his feet during the attack.

23. The police officers then handcuffed Calvin. The handcuffs were so tight they left bruises and marks still visible many months after the incident. Though handcuffed and not resisting at all, the officers punched, kicked, and hit Calvin more. At one point, one of the officers removed a weapon that looked a like a gun, pointed it at Calvin, and fired. Calvin thought he was going to be shot.

24. The weapon turned out to be a Taser or other electroshock weapon. The officers laughed as they repeatedly shocked Calvin, causing him extreme pain. At one point, the officer firing the Taser had to change cartridges so he could continue electroshocking Calvin. At no point did the officers warn Calvin they were going to use a Taser on him.

25. Through his attorneys, Plaintiff has made multiple requests to the SLMPD and the Board of Police Commissioners under Missouri's "Sunshine Law" for all of their records concerning the use of a Taser on Calvin. The requests included the number of times the Taser was fired, the time of each firing, the serial number of the Taser, the distance between the officer and Calvin when it was fired, the locations of impact on Calvin, an evaluation of the effectiveness of the use of the Taser, the "I/LEADS" report concerning the use of a Taser, the initial review of the Taser deployment conducted by a supervisor, and a copy of the Critical Incident Review conducted by the chain of command. The SLMPD and the Board of Police Commissioners have not provided any response at all to Plaintiff's multiple requests, demonstrating their intent to unlawfully withhold information from Calvin and frustrate his ability to investigate and prove his claims or, possibly, to destroy relevant evidence in their possession.

26. Defendant Jonathan Carroll, another white male police officer, arrived at the scene in a police van. The van contained two video cameras: the first recording the view through the front windshield; and the second recording the view of the interior of the rear of the van where prisoners are kept. SLMPD procedures required the van's cameras to be on and recording at all times during the incident, as well as during the subsequent transportation of Calvin Fletcher. As the van came to a stop, however, defendant Carroll deliberately turned off both of the van's video cameras. The cameras would remain off during the entire incident in question,

recording nothing of the arrest and transportation of Calvin Fletcher. Defendant Carroll clearly intended to prevent the cameras from recording the unlawful arrest and beating of Calvin Fletcher.

27. Other officers of an unknown number also arrived. Calvin was spat on. At one point, officer Jane Doe 1 put her foot on Calvin's neck while he was face down on the ground and handcuffed. They placed a black jacket in front of Calvin's head so he could not see what was happening.

28. Calvin was terrified. He had been beaten repeatedly and shot with an electroshock weapon. He was in terrible pain and he could barely move. He was handcuffed, lying prone and helpless on the ground. When the officers seemed to block any view of Calvin by passersby, Calvin was afraid they were going to shoot and kill him. Calvin wet his pants out of fear for his life.

29. The officers grabbed Calvin and placed him in the back of the police van so that, while his body was in the van, Calvin's head was between the door and doorframe. Again, the officers punched and hit Calvin with their hands and equipment. They again used the Taser to electroshock him. The officers then slammed the door hard on Calvin's head and face. Since Officer Carroll had deliberately turned off the van's cameras, none of this was captured on video.

30. In their official incident report, the police officers admitted to beating Calvin with a baton, shooting him with a Taser at least two times, and handcuffing him. Despite having been beaten, electroshocked multiple times, and handcuffed, the officers claim Calvin continued to resist arrest, including trying to drag all three officers to the ground, climb over car seats, slip handcuffs under his legs to the front of his body, and kick Defendant Martorano. In reality, other than beginning to run when first being confronted by the officers, Calvin in no way resisted

arrest at any time, nor could he have. Rather, Calvin was completely incapacitated, as he had been brutally assaulted and battered, handcuffed, and electroshocked by four angry police officers that made him afraid for his life.

31. In their paperwork, the officers also claimed Calvin sustained only a "minor cut to his forehead." In reality, the officers hit Calvin so hard they broke numerous bones in his face, including his nose, his left cheek bone, his left maxillary sinus in three places, his inferior and medial left maxilla, his left temporal bone, and his left temporomandibular joint. They also gave Calvin a cerebellar hematoma and contusions to his scalp, face, arms, chest, and legs. They further either caused a cerebellar cavernoma to form or caused an asymptomatic cavernoma to become symptomatic.

32. The police officers also claimed in their report that Calvin resisted arrest, assaulted the police officers, and was in possession of crack cocaine. However, no charges were ever brought against Calvin for any crime and, as described earlier, it is indisputable that Calvin was not in possession of any drugs or weapons when he was arrested.

## ***II. The detention, medical neglect, and isolation.***

33. After Calvin was beaten by the police officers, he was transferred to the St. Louis City Justice Center in downtown St. Louis. He would remain there until March 12, 2013. Upon his arrival, Calvin was unable to walk and in terrible pain all over his body. The Defendant police officers grabbed Calvin by the arms and literally dragged him into the Justice Center as his feet scraped against the ground. Due to the police battery and being dragged by the police officers, three of Calvin's toenails eventually fell off completely.

34. During his stay at the Justice Center, Calvin had to be transported by wheelchair at all times. He was ultimately placed in the infirmary, managed and controlled by defendant

Corizon, Inc., and under the care and supervision of Dr. Paul Geiger. Upon arrival, a nurse—April Scott—completed a health screening for Calvin. At that time, Calvin asked to go to the hospital. Ms. Scott denied his request. Everyday thereafter, Calvin asked to go to the hospital or see a doctor. His requests were always denied.

35. The medical staff gave Calvin large doses of Tylenol, which can cause severe kidney problems. Instead of improving, Calvin felt like his pain and his condition were getting worse. He was in terrible physical and emotional shock from the police assault, he was not drinking well, he went very long periods without urinating, his urine became dark, he was eating very little, and he developed terrible pain in his kidneys. These are signs of severe kidney damage.

36. The medical staff was aware of all of these problems. On or about March 10, 2013, Rhalashondra Straughter, the day shift nurse, and Joyce Sanchez, the evening shift nurse, each noted that Calvin was experiencing "kidney" pain and ate less than half of his meals. Mr. Straughter further noted that Calvin reported decreased urination with pain. Ms. Scott, the night shift nurse on or about March 10, 2013, noted that Calvin's kidney pain had increased from 4/10 during the day shift, to 5/10 during the evening shift, to 10/10 during the night shift. Upon information and belief, Dr. Paul Geiger knew of Calvin's condition after having reviewed his records and/or been orally informed of them by Ms. Scott, Ms. Straughter, Ms. Sanchez, and/or other nurses who provided care to Calvin Fletcher in the infirmary.

37. Calvin's serious medical needs were ignored. Dr. Paul Geiger, April Scott, Rhalashondra Straughter, and Joyce Sanchez failed to order appropriate any diagnostic tests or treatment in response to clear signs and symptoms of severe kidney damage and post-traumatic kidney failure. They failed to change Calvin's medications so he would not be taking large doses

of potentially kidney-damaging Tylenol. The only diagnostic test ever performed on Calvin at the Justice Center was a chest x-ray, apparently for the purpose of determining if Calvin's ribs were broken. However, the medical staff never even told Calvin the results of the x-ray.

38. On or about March 10, 2013, Calvin again asked April Scott if he could go to the hospital. The pain in his kidneys had become excruciating. Ms. Scott told Calvin that he had refused to go to the hospital when he first arrived, and that now it was too late to do so. This upset Calvin. No one had ever offered to take him to the hospital, and he never refused to go. Ms. Scott laughed at Calvin and flippantly told him again he could not go to the hospital because he was "crazy." This was extremely upsetting to Calvin.

39. Calvin also repeatedly asked to make a phone call so he could call his family and tell them where he was and what happened to him. He was denied that right for many days by staff at the Justice Center. As a non-inmate, Calvin had no right to make a phone call, since an inmate number was required to make a call. Calvin's family was afraid, as they did not hear from Calvin for many days and had no idea what happened to him. During this time, Calvin was completely isolated from the outside world and had no way of reaching out to anyone, further causing him great distress.

40. Moreover, during his confinement at the St. Louis City Justice Center, Calvin was never provided a court hearing of any kind nor otherwise taken before a Judge. He had no idea what the situation was, how long he would be confined, or when he would ever be allowed to leave.

## ***III. Further detention and medical neglect at the Perry County Sheriff's Office.***

41. On March 12, 2013, Calvin was transferred from the St. Louis City Justice Center to the Perry County Sheriff's Office, where Calvin also had warrants for traffic violations. When

he was booked, Calvin asked to be taken to the hospital. Calvin was transported to the emergency room at Perry County Memorial Hospital on March 12, 2013.

42. At the hospital, x-rays were taken of Calvin's wrists, ribs, and chest, and a computed tomography ("CT") scan was taken of his head. The CT scan revealed a cerebellar hematoma or calcification, as well as a left zygomatic arch fracture. Upon discharge, Calvin was given instructions to obtain an appointment if not improving a day after his discharge, given an appointment to obtain MRIs of his brain and other parts of his body on March 15, 2013, and given an appointment to see a physician on March 25, 2013.

43. After the hospital, Calvin was returned to a regular jail cell. Calvin continued to complain of pain to the officers and guards he came into contact with. On the day of his follow-up appointment, Calvin told Blake Leadbetter he needed to be taken to the hospital for a follow-up medical appointment to obtain an MRI. Though the Sheriff's Department was in possession of the appointment reminder, Mr. Leadbetter denied knowledge of such an appointment, and Calvin was not transferred to the hospital for his follow-up appointment and MRIs on March 15, 2013, and neither was a new appointment made for him on March 13, 2013, even though his symptoms had not improved.

44. During this entire time, Calvin's health continued to deteriorate. He became dependent upon his cellmates to get him his food and pain medications. On March 19, 2013, Calvin suffered a seizure in which he vomited and lost consciousness. No medical care was provided to Calvin. Instead, the officers told Calvin he might have to stay in jail another week if he received immediate medical attention. Hoping to avoid that, Calvin chose to go before the judge on March 19, 2013. Calvin was initially sentenced to 11 days in jail and asked the judge for medical care, but the judge stated he was not in charge of medical care and could not help

Calvin.

45. When Calvin arrived back at the jail, expecting to be there four more days, he was unexpectedly told he would be released that day. Upon his release, Calvin was left in the lobby of the jail, unable to walk. He asked staff to call him a cab. Instead, an officer drove him to Perry County Memorial Hospital, charging Calvin $17.50 for the ride.

### ***IV. Hospitalization and aftermath.***

46. At the emergency room, diagnostic tests revealed Calvin's kidneys had shut down and he was suffering from acute kidney failure. Further testing later on would show Calvin was suffering from numerous other conditions, including interstitial nephritis, hyperkalemia, tertiary hyperparathryroidism, monoclonal gammopathy, anuria, and encephalopathy. Unable to effectively treat Calvin's serious condition, Perry County Memorial Hospital transferred Calvin to Saint Louis University Hospital, where he underwent life-saving dialysis. Calvin was hospitalized until April 3, 2013.

47. As a result of the police assault and subsequent medical neglect, Calvin has suffered substantial physical and emotional trauma. He has already incurred medical bills over $150,000, and he will continue to incur additional care in the future of an unknown amount. He has suffered seizures, headaches, confusion, dizziness, vomiting, suicidal thoughts, and depression. His ability to enjoy life has been irreparably altered. He has brought this lawsuit to redress the harms that have been done to him.

## COUNT 1:
## Violations of Plaintiff's Fourth Amendment Rights, Pursuant to 42 U.S.C. § 1983

COMES NOW Plaintiff, and states as follows for his Count 1 against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, the City of St. Louis, Richard Gray, Thomas Irwin, Erwin Switzer, Bettye Battle-Turner, and Francis Slay ("Count 1 Defendants"):

48. All preceding paragraphs are re-alleged and incorporated herein.

49. On or about March 6, 2013, defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, under color of state law as City of St. Louis police officers, subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, the deprivation of his Fourth Amendment right under the United States Constitution to be free from unreasonable seizures of his person and the use of excessive force.

50. Upon information and belief, the officers were deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, promoted, accepted, or permitted by the Board of Police Commissioners, jointly with the City of St. Louis, of using excessive force during the arrests of individuals, including: hitting, kicking, punching, and/or tasing individuals after they have already been handcuffed and/or incapacitated; tasing individuals without verbal warning; and excessively tasing individuals.

51. Upon information and belief, the officers were also deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, promoted, accepted, or permitted by the Board of Police Commissioners, jointly with the City of St. Louis, of switching off in-vehicle video cameras during unlawful arrests and the transportation of individuals unlawfully arrested.

52. As a direct and proximate result of the violent attack, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

53. The conduct of the Count 1 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

54. To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against the Count 1 Defendants in an amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, for injunctive relief against defendants Gray, Irwin, Switzer, Battle-Turner, Slay, and the City of St. Louis barring them from creating, encouraging, promoting, accepting, or permitting a pattern, practice, or custom among City of St. Louis police officers of engaging in unlawful patterns and practices as described herein, and for such other legal or equitable relief the Court deems appropriate.

**COUNT 2:**
**Conspiracy to Violate Plaintiff's Fourth Amendment Rights Pursuant to 42 U.S.C. § 1983**

COMES NOW Plaintiff, and states as follows for his Count 2 against defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 ("Count 2 Defendants"):

55. All preceding paragraphs are re-alleged and incorporated herein.

56. The Count 2 Defendants reached a mutual understanding and conspired with each other to violate Plaintiff's civil rights. In furtherance of this conspiracy, the Count 2 Defendants committed several overt acts including, but not limited to, the following:

a. They physically hit, punched, kicked, spat on, electroshocked, and otherwise physically assaulted and battered Calvin Fletcher;

b. They failed to prevent or stop the physical assault and battery of Calvin Fletcher;

c. They failed to warn Calvin prior to the use of a Taser on him;

d. They tased Calvin when it was not reasonably necessary to do so, as Calvin was already incapacitated and not physically resisting;

e. They tased Calvin more times and for a greater duration than reasonably necessary or permissible under SLMPD procedures;

f. Defendant Carroll intentionally turned off all video cameras in the police van he drove to the scene—a clear violation of police procedures—for the purpose of concealing the Count 2 Defendants' illegal arrest and beating of Calvin Fletcher;

g. They created an incident report in which they falsely claimed they suspected Calvin of having a weapon because he adjusted his waistband, for the purpose of supplying themselves with a justifiable excuse for stopping Calvin, and for the purpose of portraying Calvin in a false and negative light;

h. They planted false evidence—the purported "crack cocaine" that in fact contained no controlled substances—for the purpose of bringing false charges against Calvin Fletcher and supplying themselves with a justifiable excuse for arresting and physically attacking Calvin, and for the purpose of portraying Calvin in a false and negative light;

i. They agreed to file an incident report in which they falsely claimed that Calvin Fletcher assaulted the police officers; and

j. They agreed to file a report in which they falsely claimed that Calvin Fletcher sustained only a minor cut to his forehead, when they knew he had sustained more substantial injuries.

57. As a direct and proximate result of the conspiracy between the defendant police officers, Calvin Fletcher was unreasonably seized in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, which are protected under 42 U.S.C. § 1983.

58. As a direct and proximate result of the conspiracy and violent attack by the Count 2 Defendants, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

59. The conduct of the Count 2 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

60. To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 in amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, and for such other legal or equitable relief the Court deems appropriate.

**COUNT 3:**
**Assault Under Missouri Law**

COMES NOW Plaintiff, and states as follows for his Count 3 against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, Gray, Irwin, Switzer, Battle-Turner, Slay,

and the City of St. Louis:

61. All preceding paragraphs are re-alleged and incorporated herein.

62. On or about March 6, 2013, defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1:

a. Intended to cause bodily harm or offensive contact to Calvin Fletcher, or the apprehension thereof by Calvin Fletcher, by moving their arms, hands, feet, and equipment as if to strike Calvin Fletcher; and

b. Calvin Fletcher apprehended bodily harm or offensive contact from the defendants' arms, hands, feet, and equipment, as Calvin saw them striking him.

63. As a direct and proximate result of the violent assault, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

64. The conduct of defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

65. The City of St. Louis, Gray, Irwin, Switzer, Battle-Turner, and Slay are vicariously liable for the assault, as defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1committed such acts in order to facilitate an arrest falling within the scopes of their authority, employment, and agency as police officers in the SLMPD, and such acts are fairly and

naturally incident to the business and activities of the City of St. Louis, the SLMPD, and the Board of Police Commissioners, given the patterns, practices, and customs of the City of St. Louis and Board of Police Commissioners.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, Gray, Irwin, Switzer, Battle-Turner, Slay, and the City of St. Louis in amount that is fair and reasonable, for punitive damages, and for such other legal or equitable relief the Court deems appropriate.

## COUNT 4:
## Battery Under Missouri Law

COMES NOW Plaintiff, and states as follows for his Count 4 against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, Gray, Irwin, Switzer, Battle-Turner, Slay, and the City of St. Louis:

66. All preceding paragraphs are re-alleged and incorporated herein.

67. On or about March 6, 2013, the defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 intentionally caused an offensive and/or harmful contact with Calvin Fletcher's person, as they used their hands, feet, and equipment to punch, kick, hit, and electroshock Calvin in his head, face, and body.

68. As a direct and proximate result of the violent battery by defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, multiple broken bones in his face, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

69. The conduct of defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1 was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

70. The City of St. Louis, Gray, Irwin, Switzer, Battle-Turner, and Slay are vicariously liable for the assault, as defendants Tomlinson, Martorano, Moton, Carroll, and Jane Doe 1committed such acts in order to facilitate an arrest falling within the scopes of their authority, employment, and agency as police officers in the SLMPD, and such acts are fairly and naturally incident to the business and activities of the City of St. Louis, the SLMPD, and the Board of Police Commissioners, given the patterns, practices, and customs of the City of St. Louis and Board of Police Commissioners.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against defendants Tomlinson, Martorano, Moton, Carroll, Jane Doe 1, Gray, Irwin, Switzer, Battle-Turner, Slay, and the City of St. Louis in amount that is fair and reasonable, for punitive damages, and for such other legal or equitable relief the Court deems appropriate.

**COUNT 5:**
**Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983**

COMES NOW Plaintiff, and states as follows for his Count 5 against defendants Corizon, Inc., the City of St. Louis, Dr. Paul Geiger, April Scott, Rhalashondra Straughter, and Joyce Sanchez ("Count 5 Defendants"):

71. All preceding paragraphs are re-alleged and incorporated herein.

72. While in the St. Louis City Justice Center's infirmary, Calvin Fletcher's complaints and conditions clearly indicated he was at serious risk of developing, or having already developed, acute kidney failure or other serious kidney damage. These complaints and conditions included, but were not limited to, having suffered serious physical trauma as the result

of a police assault and battery, severe emotional shock and trauma from the police assault, drinking very little, eating very little, not urinating or having bowel movements, going very long periods without urinating or having bowel movements, urine becoming dark in color, and developing terrible kidney pain.

73. The members of the medical staff were aware of all of these problems and of Calvin's numerous and frequent requests to go to the hospital. On or about March 10, 2013, Ms. Straughter, the day shift nurse, and Joyce Sanchez, the evening shift nurse, each noted that Calvin was experiencing "kidney" pain and ate less than half of his meals. Ms. Straughter further noted that Calvin reported decreased urination with pain. April Scott, the night shift nurse on or about March 10, 2013, noted that Calvin's kidney pain had increased from 4/10 during the day shift, to 5/10 during the evening shift, to 10/10 during the night shift.

74. Upon information and belief, Dr. Paul Geiger knew of Calvin's condition after having reviewed his records and/or been orally informed of them by Ms. Scott, Ms. Straughter, Ms. Sanchez, and/or other nurses, who provided care to Calvin Fletcher in the infirmary.

75. In response, the Defendants Dr. Paul Geiger, Ms. Scott, Ms. Straughter, and Ms. Sanchez should have done at least the following, but did not do so: recognize the situation as a potential medical emergency; provide emergency care or treatment; discover or diagnose Calvin's condition; have a physician examine Calvin and his records to evaluate his condition and determine the appropriate course of diagnosis or treatment, or whether a referral to another facility was appropriate; prioritize Calvin's progressively disabling condition over other inmates or non-emergency procedures; give Calvin appropriate diagnostic tests or treatment; take Calvin to a hospital; or otherwise refer Calvin to an outside facility for appropriate diagnostic tests or treatment.

76. Upon information and belief, Defendant Corizon, Inc., jointly with the City of St. Louis, instituted a pattern, practice, or custom in the infirmary at the St. Louis City Justice Center to prohibit, prevent, or limit referrals to outside care for the purpose of lowering costs and, for Corizon, Inc., making more money. Defendants Dr. Paul Geiger, Ms. Scott, Ms. Straughter, and Ms. Sanchez were complying with this pattern, practice, or custom when denying appropriate referrals to outside care for Calvin Fletcher.

77. Accordingly, under the color of state law as local entities authorized and required to provide medical care to inmates and detainees at the St. Louis City Justice Center, the Count 5 Defendants subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a deliberate indifference to his serious medical needs, in violation of his Fourteenth Amendment rights to due process of law and to be free of punishment prior to adjudication of guilt.

78. As a direct and proximate result of the Count 5 Defendants' deliberate indifference to his serious medical needs, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

79. The conduct of the Count 5 Defendants was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

80. To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages

against the Count 5 Defendants in amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, for injunctive relief against Corizon, Inc. and the City of St. Louis barring them from creating, encouraging, promoting, accepting, or permitting the medical staff at the St. Louis City Justice Center to engage in unlawful policies or practices as described herein, and for such other legal or equitable relief the Court deems appropriate.

**COUNT 6:**
**Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983**

COMES NOW Plaintiff, and states as follows for his Count 6 against the City of St. Louis:

81. All preceding paragraphs are re-alleged and incorporated herein.

82. In the St. Louis City Justice Center's infirmary, only inmates with inmate numbers are permitted to make telephone calls. Calvin Fletcher was not an inmate and had no inmate number, and was thus prohibited from making any telephone calls. He was locked away, slowly dying as the result of a brutal police assault and medical neglect, and, due to the City of St. Louis' policy, staff at the St. Louis City Justice Center repeatedly denied Calvin the ability and right to contact anyone in the outside world, including his family, for many days.

83. Under color of state law as a municipality authorized to detain and house prisoners, the City of St. Louis' policy of allowing phone calls for inmates, but denying phone calls to non-inmates, lacks any reasonable basis, does not reasonably or substantially further any reasonable or compelling government interest, and thus subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a violation of his 14th Amendment right to the equal protection of the law.

84. As a direct and proximate result of the City of St. Louis' phone policies, Calvin suffered severe mental and emotional trauma due to his total isolation and inability to contact his

family or seek help of any kind for many days.

85. The conduct of the City of St. Louis was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

86. To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against the City of St. Louis in amount that is fair and reasonable, for punitive damages, for an injunction barring the City of St. Louis from applying an unequal and unlawful phone policy in the future, for costs, and attorneys' fees, and for such other legal or equitable relief the Court deems appropriate.

**COUNT 7:**
**False Imprisonment Under Missouri Law**

COMES NOW Plaintiff, and states as follows for his Count 7 against defendant the City of St. Louis:

87. All preceding paragraphs are re-alleged and incorporated herein.

88. Between his arrest on or about March 6, 2013, and his transfer from the St. Louis City Justice Center on or about March 12, 2013, Calvin Fletcher was confined by the City of St. Louis in the infirmary and was never taken before a judge.

89. Missouri Rule of Criminal Procedure 21.09 states that, "A person arrested under a warrant for any misdemeanor shall be brought as soon as practicable before a judge of the court from which the warrant was issued." Plaintiff was arrested under a warrant for a traffic misdemeanor or infraction from the City of St. Louis.

90. The City of St. Louis, through its employees and agents in the Sheriff's Office,

the Justice Center, and/or other departments or subdivisions, were responsible for ensuring Calvin was brought as soon as practicable before a judge, and they failed to do so. Such employees and agents were acting in the courses and scopes of their employments.

91. Accordingly, the City of St. Louis confined Calvin Fletcher, without legal justification, by violating Rule 21.09 and failing to ever take Calvin before a judge, despite it being practicable to do so on multiple occasions.

92. Upon information and belief, the employees and agents of the City of St. Louis were acting in accordance with a pattern, practice, or custom of the City of St. Louis to:

a. Confine and isolate individuals who have been beaten by SLMPD police officers until their injuries heal and/or appear less severe; and/or

b. Fail to take persons arrested under a warrant for a misdemeanor before a judge as soon as practicable.

93. As a direct and proximate result of the false imprisonment, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

94. The conduct of the City of St. Louis and its employees and agents was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling Calvin to punitive damages.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against the City of St. Louis in amount that is fair and reasonable, for punitive damages, and for

such other legal or equitable relief the Court deems appropriate.

**COUNT 9:**
**Violation of Plaintiff's 14th Amendment Rights, Pursuant to 42 U.S.C. § 1983**

COMES NOW Plaintiff, and states as follows for his Count 9 against Blake Leadbetter:

95. All preceding paragraphs are re-alleged and incorporated herein.

96. Plaintiff had an appointment at Perry County Memorial Hospital to obtain MRIs of the brain and other parts of his body on or about March 15, 2013. Though the Perry County Sheriff's Office had the paperwork confirming this, and though Mr. Leadbetter was made aware of the appointment by Calvin Fletcher, Mr. Leadbetter denied knowledge of the appointment, failed to make appropriate inquiries into the existence and time of the appointment, and failed to ensure Calvin was transported to his scheduled appointment for his serious medical condition.

97. Accordingly, under the color of state law as an officer of the Perry County Sheriff's Office, Mr. Leadbetterrr subjected Calvin Fletcher to, or caused Calvin Fletcher to be subjected to, a deliberate indifference to his serious medical needs, in violation of his Fourteenth Amendment rights to due process of law and to be free of punishment prior to adjudication of guilt.

98. As a direct and proximate result of Mr. Leadbetter's deliberate indifference to Calvin Fletcher's serious medical needs, Calvin Fletcher suffered numerous serious injuries as described herein, including, but not limited to, acute kidney failure, a hematoma, a cerebellar cavernoma, seizures, fear for his life, depression, anxiety, and substantial pain and suffering, physically, mentally, and emotionally. The cost of Calvin's past medical care exceeds $150,000, and Plaintiff will require future care in an amount that cannot be pled with greater specificity.

99. The conduct of Mr. Leadbetter was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Calvin Fletcher's rights, thus entitling

Calvin to punitive damages.

100. To the extent Calvin Fletcher prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully asks the Court to award him compensatory damages against Blake Leadbetter in amount that is fair and reasonable, for punitive damages, costs, attorneys' fees, and for such other legal or equitable relief the Court deems appropriate.

Respectfully submitted,

//S// Jeffrey A. Herman
Jeffrey A. Herman, #62941MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO 63122
(314) 315-8111
(314) 315-8113
jah@bollwerktatlow.com

//S// Phillip A. Tatlow
Phillip A. Tatlow, #12687MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO 63122
(314) 315-8111
(314) 315-8113
pat@bollwerktatlow.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2015, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the parties.

By: //s// Jeffrey A. Herman