IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CALVIN FLETCHER, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:14-cv-999-RLW |
| vs. ) | |
| ) | |
| JOSEPH TOMLINSON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Against the City of St. Louis (ECF No. 89) and Plaintiff's Motion to Compel and Memorandum of Law Against Defendants Martorano, Moton, Carroll, & Tomlinson (ECF No. 91). These matters are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Calvin Fletcher ("Plaintiff" or "Fletcher") alleges that on March 6, 2013, St. Louis City police officers repeatedly shocked him with a Taser and beat him, breaking several bones in his face. (Second Amended Complaint ("SAC"), ECF No. 56, ¶1). Fletcher was then taken to the St. Louis City Justice Center, where Fletcher claims that officials deliberately ignored his serious medical needs, completely isolated him from the outside world, and refused to take him before a Judge or allow him to make a telephone call. (SAC, ¶2). On March 12, 2013, Fletcher was taken to the Perry County Sheriff's Office, and officials took him to emergency room. (SAC, ¶3). Fletcher claims that the Perry County Sheriff's Office, however, failed to take him to a follow-up medical appointment for an MRI on March 15, 2013. (SAC, ¶3). On March 19, 2013, Fletcher contends he suffered a seizure, vomited and lost

1

consciousness. (SAC, ¶3). On March 19, 2013, Fletcher was released, was taken to the emergency room and later received "life-saving dialysis" in St. Louis. (SAC, ¶4). Fletcher alleges violations of his civil rights, for assault and battery, for false imprisonment, and for violation of his right to receive public records. (SAC, ¶4).

## **LEGAL STANDARD**

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Federal rules further provide for limits on discovery requests. Specifically,

> court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii); *Halbach v. Great-W. Life & Annuity Ins. Co.*, No. 4:05CV02399 ERW, 2007 WL 2702651, at *1 (E.D. Mo. Sept. 12, 2007). Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery.

# DISCUSSION

I. **Plaintiff's Motion to Compel Against the City of St. Louis**

   A. Interrogatory No. 2

In interrogatory number 2, Fletcher asked Defendant the City of St. Louis ("the City") to identify "the department, subdivision, agency, or other entity in custody of Plaintiff at all times from March 6, 2013 through March 12, 2013." Fletcher claims that the City did not provide information regarding who was responsible for him during his confinement and from what persons or entities further appropriate discovery should be obtained. (ECF No. 89-1 at 2). In response, the City states that it has provided the dates on which Plaintiff was arrested, booked, went to court, and was transferred. (ECF No. 90).

The Court orders the City to provide the information regarding the department, subdivision, agency or other entity in control of Fletcher for the period of March 6, 2013 through March 12, 2013, as requested in the interrogatory.

   B. Interrogatory Nos. 3-4 and Request No. 5

In interrogatory numbers 3-4 and request number 5, Fletcher requests information regarding the policy or custom that individual defendants were following when they acted. Fletcher seeks information regarding 14 policies, including detaining individuals, use of force and Tasers, medical treatment for inmates, and telephone use for inmates. (ECF No. 89-1 at 3). Fletcher claims that the City has not provided all of the policies in its possession, such as those established by the St. Louis City Sheriff's Office, the Justice Center, or the City concerning taking arrestees before judges as soon as practicable, nor has the City identified other policies or unwritten practices it is aware of established by other entities such as co-defendant Corizon, the St. Louis City Metropolitan Police Department, or the Board of Police Commissioners. (ECF

3

No. 92 at 2). Fletcher maintains such information is needed to pursue his §1983 claim. (ECF No. 89-1 at 3-4). In response, the City indicates that it has produced the Department of Public Safety/Division of Corrections Health Services Management and Administration of Treatment Policies and Procedures, as well as the Department of Public Safety/Division of Corrections Inmate Telephone Use policies and procedures. (ECF No. 90 at 4-5).

The Court orders the City to provide any and all relevant policies in its possession to Fletcher. If the City has no other relevant policies, then it must so state in writing.

C. Interrogatory Nos. 17-18 and Request No. 5

In interrogatory numbers 17-18 and request number 5, Fletcher requests information regarding other lawsuits, administrative proceedings, and complaints involving evidence of similar misconduct as alleged in this case. (ECF No. 89-1 at 4-5). Fletcher claims that he is entitled to discovery into relevant complaints and occurrences involving other persons in similar situations because they are "highly relevant to the existence of a policy or custom." (ECF No. 89-1 at 5-6; ECF No. 92 at 2). Fletcher has also agreed to limit the time period to 5 years for this discovery. (ECF No. 92 at 2). In response, the City claims the requests are overly broad, unduly burdensome, and are not properly limited in scope because they seek ten years of complaints and lawsuits regarding a "vast array of issues." (ECF No. 90 at 11). The City also argues that the interrogatories and request seek information that is "wholly irrelevant" to this Plaintiff or to the events alleged in the Petition. (ECF No. 90 at 11). Finally, the City claims that the information requested is in the custody or control of other named defendants. (ECF No. 90 at 11).

The Court finds that the information requested in these interrogatories and document request is overbroad, particularly in comparison to their limited relevance to this case. The Court does not believe that such information would be particularly indicative of a policy of the City of St.

4

Louis and, in any event, such information would be better obtained from other sources. The Court denies the requests to compel this information.

D. Request No. 4

In request number 4, Fletcher requests any "letters, emails, or other correspondence" between the City and "any employee, executive officer, or agent of Corizon, Inc., Corizon, LLC, or any processor entity, concerning" topics related to the allegations in this case. (ECF No. 89-1 at 7). Fletcher claims that communications between a City's employees or between a City's employees and other parties or their representatives is relevant evidence of a custom or practice, as alleged in Fletcher's §1983 claim. (ECF No. 89-1 at 7; ECF No. 92 at 3). Fletcher indicates he would limit this request to 5 years. (ECF No. 92 at 3). In response, the City claims that the request seeks irrelevant information that is unrelated to this Plaintiff or to the specific events alleged in Plaintiff's Petition. (ECF No. 90 at 12). The City notes that it produced the Department of Safety/Division of Corrections policies and procedures and its contract with Corizon. (ECF No. 90 at 12-13).

The Court orders the City to produce communications with Corizon related to the allegations in the Petition, and only with respect to Fletcher. The Court does not believe that extending discovery as to any other persons would provide information relevant to this case.

E. Interrogatory No. 5

With respect to interrogatory number 5, Fletcher seeks information regarding whether any attempt was made to take Plaintiff before a judge following his arrest on March 6, 2013. Fletcher claims that the City has failed to provide any information regarding why Fletcher was not taken before a judge, particularly "the identities of the persons responsible for compliance with the law, a description of the reasons why Plaintiff was never taken before a judge, and the

identifies of the persons responsible for the decision to not take him before a judge." (ECF No. 89-1 at 8; ECF No. 92 at 3). In response, the City asserts that this information is irrelevant to the lawsuit's allegations, but the City produced the confined docket sheet for March 8, 2013, which list Fletcher's name. (ECF No. 90 at 13-14). The City argues that it has completely answered this interrogatory.

The Court orders the City to produce information regarding persons responsible for Fletcher's appearance before a judge during his period of confinement. The City must indicate whether Fletcher actually appeared before a judge during that time. If he did not, the City must also provide an explanation regarding why he did not appear before a judge.

F. Interrogatory No. 6

In interrogatory number 6, Fletcher seeks information regarding whether other persons confined from March 6, 2013 through March 12, 2013 were allowed to appear before a judge for the first time following an arrest. (ECF No. 90 at 14). Fletcher claims that he seeks information regarding other opportunities to take him before a judge. (ECF No. 89-1 at 9). Fletcher wants the "dates, times, and locations of court hearings, the number of new arrestees taken before a judge for the first time during Plaintiff's incarceration, and the identities of the persons responsible for arranging such appearances or transporting arrestees to them." (ECF No. 92 at 4). Fletcher maintains that the existence of opportunities to appear before a judge and the denial of Fletcher of that opportunity is "highly probative of Defendant's deliberate efforts to deny Plaintiff his rights." (ECF No. 92 at 4). In response, the City states that it produced the confined docket sheet, indicating that Fletcher saw a judge on March 8, 2013, and that a motion to compel is unnecessary. (ECF No. 90 at 14). At this stage, the Court finds that the information requested is irrelevant to this case because it does not relate to Fletcher. If the City indicates that it did not

6

take Fletcher before a judge due to lack of opportunity, then then parties and the Court can revisit this issue.

## II. Plaintiff's Motion to Compel Against Defendants Martorana, Moton, Carroll, & Tomlinson

Plaintiff's Interrogatories to Defendants Martorana, Moton, Carroll, and Tomlinson included requests for basic identifying information: full legal name and any aliases ever used; date and place of birth; social security number; current address; addresses for the last five years; and maiden and married names of spouses, along with dates of marriage/divorce/separation, and dates of birth, last known addresses, and phone numbers of any former spouses. Defendants objected and refused to provide any information, even under a protective order, stating: "Defendant objects to this interrogatory on the grounds it is overbroad, seeks information not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is protected by privacy laws. *See State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W. 3d 608, 611 (Mo. 2007)." Fletcher claims that he is unable to perform a cursory background check or investigation of Defendants because it is impossible to differentiate them from other individuals across the country with similar names. (ECF No. 91, ¶3). Fletcher maintains that Defendants would suffer no harm from producing this information pursuant to a protective order. (ECF No. 91, ¶3) Fletcher claims that, without this personally identifying information, he is unable to verify any information provided by Defendants or to engage in any reasonable background investigation of Defendants. (ECF No. 94 at 1). Further, Fletcher maintains that *Gaertner* is inapposite to this case because it involved production of a personnel file, not basic identifying information that is sought in this case. (ECF No. 91, ¶4).

In response, Defendants argue that Fletcher has no need for the information he seeks in this Motion. Defendants state that they have provided complete information regarding their

7

other lawsuits, prior employment, and discipline by licensing organizations and that they are available for depositions regarding this information. (ECF No. 93 at 4). Rather, Defendants claim that Fletcher only wants this information to harass them. (ECF No. 93 at 3). Defendants maintain that they, as police officers, could be subject to "an unquantifiable number of threats to their safety and security if their home address or other personally identifying information is released to Plaintiff." (ECF No. 93 at 5). Defendants assert that Fletcher has not shown that the risk to Defendants outweighs Fletcher's need for Defendants' personally identifying information.

The Court believes that this discovery request is overbroad and unduly burdensome. Nevertheless, the Court recognizes Fletchter's need to verify the information provided by Defendants. Therefore, the Court orders Defendants to provide their full legal names and any aliases used; date of birth; social security number; current address; and address for the last five years to Fletchers' counsel under an "attorneys' eyes only designation". The parties shall provide an amended protective order, which includes a provision for attorneys' eyes only discovery production, within seven (7) days of the date of this Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Against the City of St. Louis (ECF No. 89) and Plaintiff's Motion to Compel and Memorandum of Law Against Defendants Martorano, Moton, Carroll, & Tomlinson (ECF No. 91) are **DENIED**, in part, and **GRANTED**, in part, in accordance with the discussion outlined above.

**IT IS FURTHER ORDERED** that the parties shall provide an amended protective order, which includes an "attorneys' eyes only" provision within seven (7) days of the date of this Order.

**IT IS FINALLY ORDERED** that Defendants shall supplement their discovery responses within fourteen (14) days of this Order.

Dated this 28th day of August, 2015.

*Ronnie L. White*
RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**