UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CALVIN FLETCHER, SR.,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Case No. 4:14-CV-0999-RLW
JOSEPH TOMLINSON, *et. al.*,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants.　　　)

## DEFENDANTS' TRIAL BRIEF

Defendants Joseph Tomlinson, Nicholas Martorano, John Moton, and Jonathan Carroll ("Defendants"), by and through their undersigned counsel, hereby submit their Trial Brief, pursuant to the Order Relating to Trial entered on April 13, 2016. (Doc. 150).

## I.  FACTS

Plaintiff Calvin Fletcher is an unemployed, convicted felon who suffers from memory loss.  On March 6, 2013, Plaintiff had been smoking marijuana when, later that evening, without a driver's license, he drove a car he did not own and got out at a vacant lot, purportedly to go purchase cigarettes. Plaintiff was walking toward the corner at 13th and Cole Ave. in the City of St. Louis when he saw a police car on patrol.

At that time, Plaintiff had multiple warrants out for his arrest.  The patrol car he saw was occupied by three of the officers who have been named

1

as defendants in this case, *i.e.*, Tomlinson, Martorano, and Moton.  They had been traveling east on Cass Avenue at 13th Street when they noticed Plaintiff try to conceal something inside his waistband.

Plaintiff saw the officers stop to get out of their squad car, and he then removed from his waistband a plastic bag of an off-white substance that looked to Officer Tomlinson like it might be crack cocaine.  Plaintiff then started to move away from the officers, and so Tomlinson called for Plaintiff to stop.  He told Plaintiff that he was "under arrest".  Instead, Plaintiff quickly backed away, and the Defendant officers gave chase.  After a short pursuit, they caught up with Plaintiff on the other side of Cass Avenue.

Plaintiff resisted arrest.  He rolled onto his stomach with his hands beneath him, refusing to allow the officers to handcuff him.  After a struggle, the officers were able to handcuff Plaintiff while they informed him of his *Miranda* rights.

Plaintiff was then lifted to his feet and moved to the squad car, resisting the whole way.  Once in the squad car, Plaintiff continued to thrash around and shout incoherently.  The officers called for additional support, and a police cruiser came to the scene for the purpose of transporting Plaintiff to the City Jail.  The cruiser was driven by Defendant Carroll.

EMS also was called and was at the scene by 9:00 p.m.  The EMS medics examined Plaintiff, and their examination revealed a laceration to the

2

left side of Plaintiff's forehead and some sores, scrapes and bruises on Plaintiff's legs and backside.   Bandages were applied, and after Plaintiff refused further medical care, he was taken in the police cruiser to the criminal justice center for the City of St. Louis.

Defendants Tomlinson, Martorano, and Moton had no further contact with Plaintiff.  Defendant Carroll drove Plaintiff to the criminal justice center and, after dropping off Plaintiff, never saw or dealt with him again.

At the justice center, Plaintiff was then booked on criminal charges of third degree assault and resisting arrest.  Analysis of the off-white substance that Plaintiff had discarded at the scene revealed no controlled substance. Police at the Justice Center learned, however, that Plaintiff was wanted on criminal charges pending against him in Perry County, Missouri.  Plaintiff was accordingly processed through the St. Louis justice center and was then transported and delivered into the custody of Perry County, Missouri.  He remained in the custody of Perry County until March 19, 2013.

About three weeks after his release from Perry County, in April of 2013, Plaintiff was admitted to Barnes Hospital for acute renal failure. Plaintiff also is HIV-positive and, with a history of alcohol and cocaine abuse, has long-suffered from ulcers, syphilis, hypertension and schizophrenia.

Plaintiff now blames the defendant police officers for his medical problems.

3

## II.  <u>PENDING CLAIMS</u>

Plaintiff initially filed this lawsuit against, not only the defendant police officers, but also against the City of St. Louis and those that provided medical care to him while in custody.  Plaintiff has since settled with and/or dismissed those other defendants.  Plaintiff's remaining claims are those that he has alleged against the individual police officers involved in his arrest on the night of March 6, 2013:  Officers Tomlinson, Martorano, Moton and Carroll.

Plaintiff alleges four claims against these Officers:  A 4th Amendment claim for Excessive Force (Count I); Conspiracy to violate Plaintiff's constitutional rights (Count II); and Assault and Battery (Counts III and IV).


## III.  <u>FACTUAL ISSUES</u>

The primary factual issues to be decided at trial are:

1)   Did Plaintiff resist arrest?

2)   What force did the defendant police officers use in order to subdue and arrest Plaintiff?

3)   Were the police officers justified in their use of such force?

4)   Did such force cause Plaintiff's alleged medical problems?

5)   What amount of losses, if any, did Plaintiff sustain as a result of the alleged use of force?

4

IV.   <u>LEGAL ISSUES</u>

1)   <u>Elements of the Pending Causes of Action</u>

The first legal question to be decided at trial is whether Plaintiff has produced evidence sufficient to prove the elements of each of his pending causes of action.  Those elements and the required standards of proof for each cause of action are discussed below.

*a)*   *Count 1 – Violation of 4th Amend. Under 42 U.S.C. § 1983*

Plaintiff's first claim is that each of the Defendants used excessive force when trying to subdue and arrest Plaintiff on the night of March 6, 2013.  To prove this claim, Plaintiff must show – as to each of the defendant police officers – that the amount of force used by that officer to arrest Plaintiff was objectively unreasonable, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015).

The evidence produced must be sufficient to prove that, under the circumstances faced on the night of March 6, 2013, no reasonable officer would have resorted to the amount of force used in subduing Plaintiff. *Graham,* 490 U.S. 386, 396-97.   The facts must be viewed from the perspective of the Defendant officer, and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to

5

make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Absent evidence to show that the Defendant officer used more force than he reasonably believed to be necessary in light of all the facts and circumstances they faced on the night of March 6, 2013, Plaintiff's claim against that officer under Count I should not be submitted to the jury. *Id.*

### b)  *Count 2 – Conspiracy to Violate 4th Amend., 42 U.S.C. § 1983*

To prove his 42 U.S.C. § 1983 conspiracy claim, Plaintiff must show: (1) that all Defendants conspired with each other to try to deprive Plaintiff of his constitutional rights; (2) that at least one of the Defendants engaged in an overt act to deprive Plaintiff of his constitutional rights; and (3) that the overt act proven is what caused the injury of which Plaintiff is complaining. *Askew v. Millerd,* 191 F.3d 953, 957 (8th Cir.1999). Plaintiff must "specifically demonstrate with material facts that the defendants reached an agreement" with each other to deprive Plaintiff of his constitutional rights. *Bonenberger v. St. Louis Metro. Police Dep't,* 810 F.3d 1103, 1109 (8th Cir. 2016).

Absent evidence that a particular Defendant entered into an agreement with one or more other Defendants, no conspiracy claim against that Defendant can be submitted to the jury. *Id.*

c)   *Counts 3 & 4 – Assault and Battery*

Under Missouri law, the standards for determining whether a police officer is liable on state-law claims for either assault or battery are different from the standards used for a private party. *Washington v. Drug Enforcement Admin.,* 183 F.3d 868, 874 (8th Cir. 1999). Unlike assault-and-battery claims against a private party, Plaintiff's claims of assault and battery in this case cannot be submitted to the jury unless Plaintiff produces evidence that shows – not just that each defendant police officer bodily struck Plaintiff or somehow put Plaintiff in fear of bodily harm – but that each police officer used "more force than was reasonably necessary" to subdue and arrest Plaintiff. *Neal v. Helbling,* 726 S.W.2d 483, 487 (Mo. App. E.D. 1987). "A plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it". *Id.*; *Barrientez v. Jefferson Cty.*, No. 4:12CV179 HEA, 2016 WL 915188, at *5 (E.D. Mo. Mar. 10, 2016) (same); *Holtgreven v. O'Fallon Police Dep't*, No. 408CV00553 ERW, 2009 WL 2032164, at *11 (E.D. Mo. July 8, 2009) (same).

Absent evidence that each of the defendant police officers used more force than was reasonably necessary to subdue and arrest Plaintiff, the claims of assault and battery fail as a matter of law and cannot be submitted to the jury. *Id.*

## 2)   Elements of Affirmative Defenses

The second legal question to be decided at trial is whether Defendants have produced evidence sufficient to support the affirmative defenses each has asserted in response to Plaintiff's claims against them.   The proof required to sustain each of those affirmative defenses are discussed below.

### a)   Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011) (citations omitted).  This accommodation exists so that officials are not forced to err on the side of caution for fear of being sued. *Hunter v. Bryant*, 502 14 U.S. 224, 229 (1991).   "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335-36 (1986).

It is undisputed that Plaintiff did not obey the police on the night of March 6, 2013, and the evidence will show that each of the Defendant Officers acted reasonably in subduing and arresting Plaintiff.  To the extent any of the Defendant Officers were mistaken in their assessment of the risk that Plaintiff posed to them, such mistaken assessment was honest and

8

reasonable in light of all the circumstances. Plaintiff has no evidence to prove that the Defendant Officers were "plainly incompetent" or that they "knowingly violated the law". Defendants, therefore, are entitled to qualified immunity, and Plaintiff's claims against them should not be submitted to the jury. *Id.*

### b)   Official Immunity

The doctrine of Official Immunity "provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (quoting *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. App. 1991)). "The function of official immunity is to protect individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 765 (Mo. banc 2006).

The misconduct alleged against the Defendant officers consists entirely of "discretionary acts". As the Eighth Circuit has held: "a police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White,* 794 F.3d 1008, 1013 (8th Cir. 2015).

The doctrine of official immunity, therefore, shields each of the Defendant police officers in this case from any liability he may otherwise have for Plaintiff's claims in this case. *Id.; see also Seiner v. Drenon,* 304

F.3d 810, 813 (8th Cir. 2002) (applying official immunity to shield a police officer from a claim of excessive force); *Coates v. Powell*, 650 F. Supp. 2d 932, 943 (W.D. Mo. 2009) *aff'd,* 639 F.3d 471 (8th Cir. 2011) (police officers were officially immune from state law claims for assault and battery); *DaVee v. Mathis,* 812 S.W.2d 816 (Mo. App. 1991) (plaintiff's claim of assault against police officers was barred by the doctrine of official immunity).

It may be possible for Plaintiff to overcome the defense of Official Immunity.  However, in order to do so, Plaintiff must present evidence showing that the Defendant police officers acted with "bad faith" or with "malice" toward Plaintiff.  *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446 (Mo. banc 1986).  This is a particularly high standard to overcome.  In order to prove "bad faith" or "malice", Plaintiff must show that each Defendant, while trying to subdue Plaintiff during an arrest, consciously intended to injure Plaintiff.  Plaintiff must show that each Defendant Officer knew of Plaintiff and had reason to injure him.  *Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 479 (Mo. App. 2005) ("Bad faith or malice generally requires actual intent to cause injury").

Absent substantial evidence to show an actual intent of the part of each Defendant to inflict injury for sake of inflicting injury, Defendants are officially immune from liability, and each of Plaintiff's claims against them fails as a matter of law.  *Id.*

10

c)   <u>Public Duty Doctrine</u>

Like official immunity, the public duty doctrine shields police officers and other public employees from tort liability for official acts or omissions. *Southers v. City of Farmington, Missouri*, 263 S.W.3d 603, 610 (Mo. banc 2008). Public employees engaged in official business typically owe a duty of care only to the general public, not to individual citizens. *Norton v. Smith*, 782 S.W.2d 775, 777 (Mo.App. E.D. 1989). Therefore, under the public duty doctrine, "[p]ublic officials, including police officers, may not be held civilly liable for breach of a duty owed to the general public rather than particularized individuals." *Deuser v. King*, 24 S.W.3d 251, 254 (Mo.App. E.D. 2000).

In order to prove his tort claims against the Defendant Officers, Plaintiff must show that the officers owed a duty to him, that the officers breached that duty, and that the breach was the proximate cause of their injury. *See Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. 1999). "The threshold requirement to establish tort liability... is the existence of a legal duty on the part of the defendants to conform to a certain standard of conduct to protect others against risks." *Lawhorn v. City of Smithville*, 715 S.W.2d 300, 302 (Mo.App. W.D. 1986) (internal quotations omitted). In cases involving the responsibilities of police officers, the meaning of "public duty" is broadly construed. *Id.*

11

In this case, Plaintiff is unable to show the breach of any duty owed specifically to Plaintiff.   Plaintiff, therefore, cannot prove his tort claims against the Defendant police officers.  <u>Id</u>.

<u>Conclusion</u>

Based upon the applicable law and the evidence to be received at trial, judgment should be entered for each of the Defendant police officers.

Respectfully submitted,

**CHRIS KOSTER**,
Attorney General

   /s/ Henry F. Luepke
Henry F. Luepke, #38782MO
Jillian M. Mueller, #65033MO
Assistant Attorney General
Post Office Box 861
St. Louis, MO  63188
Tel: (314) 340-7652
Fax: (314) 340-7029
E-mail: <u>Bud.Luepke@ago.mo.gov</u>

*Attorneys for Defendants
Tomlinson, Martorano, Moton, and
Carroll*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties.


*/s/ Henry F. Luepke*
Assistant Attorney General