UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CALVIN FLETCHER, ) | |
|     Plaintiff, ) | |
| vs. ) | No. 4:14-CV-999-RLW |
| ) | |
| JOSEPH TOMLINSON, et al., ) | |
|     Defendants. ) | |

PLAINTIFF'S TRIAL BRIEF

Facts

On the evening of March 6, 2013, three fully armed and armored St. Louis City police officers, each over six feet tall and weighing approximately 200 pounds got out of a police car near 13th and Cass to arrest a lone, unarmed, 5'8", 155 lb. man, Plaintiff Calvin Fletcher. The three officers were Joseph Tomlinson, Nicholas Martorano, and John Moton. They were soon joined by a fourth St. Louis City policeman, Jonathan Carroll. These four (Mssrs. Tomlinson, Martorano, Moton, and Carroll) are the Defendants here.

As the policemen got out of their car and came toward him, Mr. Fletcher was scared and surprised. He'd done nothing other than to be a lone African-American man walking in the city at night.[1] Out of this fear and surprise, he backpedaled a few steps as the policemen came running toward him. One of them, Mr. Martorano, tripped and fell as he was running toward Mr. Fletcher. Mr. Fletcher also fell while backpedaling. When Mr. Martorano reached Mr. Fletcher, who was then just starting to sit up only a few steps away from where Martorano had fallen, he delivered a heavy blow to Mr. Fletcher's head.

---

[1] Defendants say they'd seen Mr. Fletcher throw items from his pocket after he (Fletcher) had noticed them in their patrol car. Mr. Fletcher says he did no such thing. The officers indeed brought something in as evidence they say they found on the ground where Mr. Fletcher had been. The lab said it was not drugs at all.

The Defendants claim that Mr. Fletcher physically resisted all four of them. In fact, they claim that they'd used no force at all until Mr. Fletcher began fighting with them, kicking them, thrashing about, and holding his hands under his body so he could not be handcuffed. This, they say, was the reason that Mr. Moton then began beating Mr. Fletcher with a baton. This, they say, was the reason Mr. Martorano tasered Mr. Fletcher, twice. They say Mr. Fletcher fought like a wild man with superhuman strength, as though he was on PCP.

Mr. Fletcher did not in fact resist the Defendants at all. The EMT who said he examined Mr. Fletcher a few minutes later noticed nothing about Mr. Fletcher that indicated any such bizarre behavior or drugs/intoxication. The jail infirmary where Mr. Fletcher was delivered a few minutes later that evening did not even deem it necessary to conduct a blood screening on the man.

There is a recording from the dashboard camera of the vehicle that Mr. Carroll drove as he approached the scene. The recording stops nearly immediately after the vehicle reaches the scene. Though the Defendants say Mr. Fletcher was resisting and fought them continually from the time they approached him until the time they loaded him into Mr. Carroll's vehicle, the video shows no resisting at all by Mr. Fletcher. The City also produced a download of the taser records showing when the taser used on Mr. Fletcher was fired. Though the Defendants say they used the taser in order to get him handcuffed, the download record shows the taser was fired about half an hour *after* Mr. Fletcher was handcuffed. The policemen said nothing to the EMT about having tasered Mr. Fletcher or having hit him with a baton.

All four of the Defendants used excessive force against Mr. Fletcher. According to at least two medical doctors (and none on the defense side), including even a *defense* expert witness, this beating by the Defendants inflicted on Mr. Fletcher the following injuries: a broken

eye socket; a broken nose; several smaller facial/skull fractures; a brain injury; various bruises, cuts and scrapes all over his body; and kidney damage serious enough that it led to acute kidney failure and Mr. Fletcher's near death. He was hospitalized for weeks and incurred six-figure medical bills. The prosecutor refused the charges of resisting arrest, drug possession, and assault on a law enforcement officer which the Defendants had requested against Mr. Fletcher.

Procedural History and Remaining Claims

This case was originally much broader, but Plaintiff has voluntarily dismissed many of the claims and (former) defendants. All that remains for trial are the claims against the four individuals under the Fourth Amendment, state law assault/battery, and conspiracy,-- all with respect to the excessive force on March 6, 2013.

Anticipated Legal/Evidentiary Issues

There are pattern 8th Circuit instructions for excessive force claims, and Missouri Approved Jury Instructions for assault/battery, so Plaintiffs do not anticipate any major issues with respect to the verdict directors. The conspiracy verdict directors may prove somewhat more challenging, though Plaintiff intends to submit a proposed verdict director that will be acceptable to the Court and the Defendants.

Mr. Fletcher has a number of alleged earlier arrests and criminal charges. They are all fairly petty and most are much longer ago than ten years. More, most if not all of them never evened ripened into an actual conviction. Though Defendants have indicated they intend to try to introduce this inadmissible history into evidence, it would be inadmissible under Federal Rules of Evidence 403, 404, 410, and 609.

Defendants have indicated an intent to argue Mr. Fletcher's substantial trauma/injuries were caused by some other person, force, or mechanism. They have offered absolutely no

competent expert medical opinion to support this theory, and should be barred from asserting it, as it would be expert opinion without foundation and therefore inadmissible under both Federal Rules of Evidence 403 and 703.

Issues relating to police encounters with arrestees, particularly African-Americans[2], are very much in the public eye these days. It would be difficult for any American to not be sorely disturbed by the many video recordings and news reports that have been front and center in the nation's public forums over the last several months and even years. While no human being could be expected to not have a strong emotional reaction to such events, it is anticipated that voir dire would explore the extent to which any of the jurors simply cannot be fair to one side of this litigation or the other due to those events, and regardless of the evidence and instructions they might be given.

While Defendants' Trial Brief (submitted this same day) has been merely skimmed so far, it seems Defendants intend to argue a lack of sufficient evidence to submit Mr. Fletcher's claims to the jury. Given that Defendants did not even bother moving for summary judgment on these claims, that suggestion seems a tad disingenuous. But new lawyers have stepped in to represent Defendants, and perhaps they have a new angle on the case the earlier lawyers did not. Regardless, Mr. Fletcher himself will testify that he did not resist the Defendants at all, obeyed (or tried to obey) all their orders, and that the Defendants nevertheless repeatedly beat him, rather savagely. And two different medical doctors will testify (live or via deposition or both) that Defendants' attack broke bones in Mr. Fletcher's body and, literally, nearly killed him. It therefore seems somewhat far-fetched to suggest that there won't be enough evidence to submit this case to a jury on both the federal and state law claims.

---

[2] Mr. Fletcher is African-American.; three of the four Defendants are white.

Finally, one of Plaintiff's live witnesses is a medical doctor, and is available only on Monday afternoon, the 8th. Plaintiff therefore requests the Court and Defendants to be mindful of that scheduling limitation.

Conclusion

Plaintiff anticipates and hopes for a fairly clean trial, and a substantial Plaintiff's jury verdict, on which the Court would be respectfully requested to enter a consistent judgment.

BOLLWERK & TATLOW, LLC

BY:     By: //s// Phillip A. Tatlow
Phillip A. Tatlow, #12687MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO  63122
(314) 315-8111
(314) 315-8113
pat@bollwerktatlow.com

/s/Mark H. Zoole
Mark H. Zoole  #38635M (formerly #4773)
P.O. Box 190549
St. Louis, MO  63119
(314) 223-0436
zoole@sbcglobal.net

Counsel for Plaintiff

Certificate Of Service

The undersigned certifies that a true and accurate copy of the foregoing was served on all counsel of record, including Henry F. Luepke, Bud.Luepke@ago.mo.gov, and Jillian Meek Mueller, Jillian.Mueller@ago.mo.gov, P.O. Box 861, St. Louis, MO, 63188, and Phil Tatlow, 10525 Big Bend, St. Louis, MO, 63122, pat@bollwerktatlow.com via the Court Clerk's electronic notification system on this 19th day of July, 2016.

/s/Mark H. Zoole