UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CALVIN FLETCHER, SR., | ) |
| Plaintiff, | ) No. 4:14-CV-999 RLW |
| v. | ) |
| JOSEPH TOMLINSON, et al. | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion and Application for Fees and Expenses (ECF No. 195), Defendants John Moton and Nicholas Martorano's Motion for a New Trial (ECF No. 201), Motion of Defendant John Moton for Judgment in His Favor as a Matter of Law (ECF No. 203), Defendants John Moton and Nicholas Martorano's Motions to Alter or Amend the Judgments (ECF No. 205), and Plaintiff's Motion to Strike (ECF No. 207).

### I. Defendants John Moton and Nicholas Martorano's Motion for a New Trial (ECF No. 201)

Federal Rule of Civil Procedure 59 governs motions for a new trial. Rule 59 states, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

Defendants raise several reasons for this Court to grant their Motion for a New Trial. First, Defendants claim it was prejudicial error for the Court to allow Plaintiff to read into evidence the out-of-court opinions of Dr. Arnold Berns. (ECF No. 202 at 1-13). First, Plaintiff

claims that Plaintiff failed to demonstrate that Dr. Berns was "unavailable" under Rule 804(b)(1) such to allow Plaintiff to read Dr. Berns' opinion testimony. Defendants state that Plaintiff never showed that Dr. Berns was unavailable and the Court never made such a finding. (ECF No. 202 at 7). Defendants state that Plaintiff's counsel presented no evidence that they offered to pay Dr. Berns his expert witness fee or that they made any effort to procure Dr. Berns' appearance at trial, either live or by video. (ECF No. 202 at 9; ECF No. 212 at 4). Defendants claim that they had no opportunity to cross-examine, impeach or discredit Dr. Berns' deposition testimony. (ECF No. 202 at 9). Likewise, Defendants argue that the Court never made the necessary finding that Dr. Berns was unavailable. (ECF No. 212 at 7). Therefore, Defendants claim that they are entitled to a new trial because Plaintiff should not have been allowed to read Dr. Berns' opinions to the jury. (ECF No. 202 at 9).

Second, Defendants assert that Dr. Berns was never qualified to render the medical opinions regarding Plaintiff. (ECF No. 202 at 9-10). Defendants assert that Dr. Berns was originally identified as Corizon's witness, but Corizon did not appear at trial and never established Dr. Berns' qualifications to render an opinion as to Plaintiff.

Third, Defendants maintain that the "erroneous admission" of Dr. Berns' out-of-court opinions was prejudicial to Defendants. (ECF No. 202 at 11-12). Defendants state that Plaintiff never identified or produced Dr. Berns to testify as an expert witness for Plaintiff. (ECF No. 202 at 11). As a result, Defendants claim that "Defendants never deposed Dr. Berns as an expert witness for Plaintiff." (ECF No. 202 at 11). Defendants assert that Plaintiff put Dr. Berns on his "may call" list of trial witnesses. (ECF No. 202 at 11-12). Defendants claim that they learned only four days before the trial that Plaintiff intended only to read the deposition of Dr. Berns into the record. (ECF No. 202 at 12). Defendants maintain that Plaintiff should have produced Dr.

Berns at trial or not at all. (ECF No. 212 at 8-9). Defendants claim that they were prejudiced by the reading of Dr. Berns' deposition at trial because Defendants were not given the opportunity "to depose Dr. Berns as one of Plaintiff's experts or to identify their own rebuttal expert, or to cross-examine Dr. Berns at trial." (ECF No. 202 at 12).

Additionally, Defendants assert that they did not waive their objections to the reading of Dr. Berns' deposition because they failed to file their objections as part of their pretrial. (ECF No. 212 at 11-12). Defendants state that they had no objection to Plaintiff's deposition designations for Dr. Berns as long as he would be available for cross-examination at trial. Defendants maintain that once they learned that Dr. Berns would not testify at trial, they objected. (ECF No. 212 at 12-13).

As an additional basis for a new trial, Defendants claim that Plaintiff's counsel falsely stated during closing argument that Plaintiff had decided to dismiss his claims against Defendant Corizon because Corizon's employees were not responsible for his injuries, not because Corizon paid a substantial settlement. (ECF No. 202 at 13-16). Defendants state that Plaintiff's counsel never explained the real reason why Corizon was no longer a defendant in the case. Instead, Defendants claim that "the jury was left with the false impression—created by Plaintiff's counsel—that it was the deposition testimony of Dr. Berns that persuaded the Plaintiff to 'let [Corizon] go,' rather than the large financial settlement by Corizon." (ECF No. 202 at 14).

In response, Plaintiff provides that Defendants waived their objections to the use of the deposition of Dr. Berns. (ECF No. 209 at 1). Plaintiff states that, pursuant to the Court's Order, he served his deposition designations, including the deposition designations for Dr. Berns, on Defendants on July 19, 2016. (ECF No. 163). Under the Case Management Order, Defendants were supposed to make any objections to those designations at least ten days before trial. (ECF

No. 154). Defendants did not object within that time frame, and Plaintiff claims that Defendants thereby waived any objections. Instead, Defendants raised this issue on the Friday before trial. (ECF No. 178). Likewise, Plaintiff argues that Defendants did not file a *Daubert* motion to challenge Dr. Berns' qualifications to testify, thereby waiving any argument regarding his testimony. (ECF No. 209 at 2).

Plaintiff also claims that Dr. Berns was properly identified as an expert witness on September 29, 2015 by Corizon and the Jail Defendants. (ECF No. 209 at 2 (citing *Bliss v. BNSF Ry. Co.*, No. 4:12CV3019, 2013 WL 5570231, at *3 (D. Neb. Oct. 9, 2013) ("Irrespective of which party discloses an expert report, once that disclosure is made, the purpose of requiring expert disclosures is met.")). In fact, Defendants did not object or raise an issue as to Dr. Berns' qualifications during trial. (ECF No. 209 at 2, n.2). Plaintiff further notes that Defendants' counsel attended the deposition of Dr. Berns on January 13, 2016 and extensively cross-examined Dr. Berns. (ECF No. 209 at 3). Plaintiff even paid for the deposition of Dr. Berns. (ECF No. 209 at 3). Plaintiff states that he also identified Dr. Berns (as well as any other retained experts disclosed by Defendants) as an expert witness. *See* ECF Nos. 209-4, 209-5.

Further, Plaintiff states that Dr. Berns' testimony was not hearsay because it meets the standards of Federal Rule of Civil Procedure 32. (ECF No. 209 at 3-4 (citing Fed. R. Civ. P. 32(a), Fed. R. Evid. 802).[1] Plaintiff points out that Defendants' counsel attended Dr. Berns'

---

[1] Fed. R. Civ. P. 32(a)(1) provides, "At a hearing or trial, all or part of a deposition may be used against a party on these conditions: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it; (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (C) the use is allowed by Rule 32(a)(2) through (8)."

Fed. R. Evid. 802 provides, "Hearsay is not admissible unless any of the following provides otherwise:

deposition, after receiving proper notice, and cross-examined Dr. Berns. Plaintiff further asserts that Dr. Berns was "unavailable" because he lives and practices medicine in Chicago, Illinois. (ECF No. 209 at 4). Plaintiff made an additional showing of Dr. Berns' unavailability on the record in trial. Plaintiff claims this satisfies Fed. R. Civ. P. 32(a)(4).[2] Plaintiff also maintains that placing Dr. Berns' name on the "may call" witness list merely preserved the right to have him appear at trial and did not preclude Plaintiff from playing Dr. Berns' deposition instead of live testimony. (ECF No. 209 at 5-6).

Plaintiff again indicates that Dr. Berns was qualified to give expert medical opinions. Plaintiff states that Defendants waived this issue several times. In addition, Plaintiff contends that Dr. Berns' qualifications were detailed by Dr. Arkin and Dr. Berns himself. (ECF No. 209 at 6-7). Finally, Plaintiff asserts that Defendants were not prejudiced by the use of Dr. Berns'

---

- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court."

[2] A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

(A) that the witness is dead;

(B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

(C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

(D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

(E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

deposition because defense counsel cross-examined Dr. Berns as an expert. Plaintiff states it is of no instance under the law whether Dr. Berns was designated as an expert for Corizon and the Jail Defendants instead of for Plaintiff. (ECF No. 209 at 7-8 (citing *Bliss v. BNSF Ry. Co.*, No. 4:12CV3019, 2013 WL 5570231, at *3). Lastly, Plaintiff states that the overwhelming evidence, particularly Plaintiff's severe injuries, further indicate that Defendants were not prejudiced by Dr. Berns' testimony.

Plaintiff also states that a new trial is not warranted based upon Plaintiff's counsel's closing argument. (ECF No. 209 at 9-10). Plaintiff points out that defense counsel asked for, and received, a curative instruction. With respect to the curative instruction, defense counsel said that "we'd be fine with that." (ECF No. 209 at 9-10 (citing *United States v. Bolden*, 545 F.3d 609, 630 (8th Cir. 2008)). Plaintiff states that no further objections or requests for relief were made and Defendants failed to preserve their objection. (ECF No. 209 at 9-10 (citing *United States v. Foreman*, 588 F.3d 1159, 1164 (8th Cir. 2009)). In addition, Plaintiff contends that a single isolated statement is insufficient to require a new trial. Indeed, Plaintiff notes that Defendants have not argued that the judgment was against the weight of the evidence. Moreover, Plaintiff points out that the Court's instructions specifically told the jury that "Lawyers' statements, arguments, questions and comments are not evidence." (ECF No. 209 at 11-13).

Here, the Court finds no basis for granting a new trial. The Court already addressed both of the issues identified by Defendants as bases for his motion for a new trial. First, the Court addressed all of Defendants' objections to the testimony of Dr. Berns. The Court noted that Dr. Berns was disclosed as a witness by another defendant to this litigation and was cross-examined thoroughly by Defendants' counsel. Defendants claim that they were prejudiced because they

were unable to cross-examine Dr. Berns when he was an expert witness for Plaintiff. However, this appears to be a distinction without a difference. *See Bliss*, 2013 WL 5570231, at *3. Defendants fail to identify how their questioning of Dr. Berns would have been different if they had known that Dr. Berns was an expert on behalf of Plaintiff, instead of the other defendants. Further, the Court holds that Plaintiff satisfied the "unavailability" requirement under Fed. R. Civ. P. 32(a) by presenting a letter to the Court from Dr. Berns' Chicago office that he would be unavailable for trial because he would be practicing medicine in Chicago. The Court further holds that Plaintiff placing Dr. Berns on the "may call" list did not preclude Plaintiff from utilizing his deposition, which was clearly identified in Plaintiff's deposition designations. Finally, the Court holds that Defendants cannot contend post-trial that Dr. Berns was unqualified to provide expert testimony. Defendants never filed a *Daubert* motion challenging his qualifications. Likewise, Defendants did not raise this issue before the Court when Defendants addressed the testimony of Dr. Berns immediately before the trial. Defendants have waived the right to assert that Dr. Berns was unqualified. Moreover, the Court held (and again holds) that the record is clear that Dr. Berns, a nephrologist, was qualified to provide his medical opinions.

Likewise, the Court holds that the curative instruction given during Plaintiff's counsel's closing argument was adequate. *United States v. Urick*, 431 F.3d 300, 304 (8th Cir. 2005); *United States v. Coleman*, 349 F.3d 1077, 1087 (8th Cir.2003) (quoting *United States v. Muza*, 788 F.2d 1309, 1312 (8th Cir.1986) (the admission of a prejudicial statement is "'ordinarily cured by striking the testimony and instructing the jury to disregard the remark'"). Defense counsel agreed to the curative instruction no further request for relief was requested. Further, given the extensive testimony regarding Plaintiff's injuries, the Court does not believe that the

trial was so tainted that a new trial should be held. The Court denies Defendants' Motion for a New Trial.

>   II. **Motion of Defendant John Moton for Judgment in His Favor as a Matter of Law (ECF No. 203) and Plaintiff's Motion to Strike (ECF No. 207)**

Defendant Moton claims that he is entitled to judgment as a matter of law because no evidence at trial showed that he engaged in any conduct that constituted excessive force and there is no evidence that Defendant Moton was one of the officers who caused Plaintiff's injuries. (ECF No. 203). Defendant Moton further claims that he is entitled to judgment as a matter of law because Plaintiff's evidence at trial was insufficient to overcome Defendant Moton's affirmative defense under the doctrine of qualified immunity.

Plaintiff has moved to strike the Motion of Defendant John Moton for Judgment in His Favor as a Matter of Law. (ECF No. 207). Plaintiff notes that Defendant Moton is precluded from seeking such relief because he did not move for directed verdict or otherwise move for judgment as a matter of law during trial on behalf of Defendant Moton on the §1983 count.

Even though Defendant Moton failed to move for judgment in his favor at the close of the trial's evidence, Defendant Moton claims that this Court should still consider his Motion for Judgment in His Favor as a Matter of Law because this Court has discretion to do so and to ensure that there has been no miscarriage of justice. (ECF No. 211 (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (new trial awarded where the verdict was contrary to the weight of the evidence and improper instructions were given); *Cheney v. Moler*, 285 F.2d 116, 118 (10th Cir. 1960) (new trial awarded where the plaintiff was granted judgment without an award of damages)). Moton further argues that such a motion would have been "futile," considering that his counsel's motions for directed verdict in favor of Officers Tomlinson and Carroll were denied.

The Eighth Circuit has held that "[a] motion for judgment as a matter of law under Fed.R.Civ.P. 50 *requires* that the moving party make the motion prior to the time the case goes to the jury." *Douglas Cty. Bank & Trust Co. v. United Fin. Inc.*, 207 F.3d 473, 477 (8th Cir. 2000). The Eighth Circuit recognizes three exceptions to this rule:

> The first exception allows a movant to challenge a jury verdict without moving for a judgment as a matter of law at the close of evidence if their earlier Rule 50(a) motion 1) was raised prior to the close of all of the evidence; and 2) the court indicated that the movant need not renew its motion under Rule 50(b) in order to preserve its right to challenge the verdict. *Pulla v. Amoco Oil Co.,* 72 F.3d 648, 655 (8th Cir.1995). The second exception excuses the movant from complying with Rule 50 if no new evidence is presented after the original motion *and* that a tacit understanding exists that the movant need not renew its motion at the close of all the evidence. *K & S Partnership v. Continental Bank,* 127 F.R.D. 664, 666–67 (D.Neb.1989), *aff'd* in part, *rev'd* in part, 952 F.2d 971 (8th Cir.1991). The third exception occurs where a short period of time elapses between the movant's initial motion and the close of all evidence, but the movant fails to renew its motion as directed by Rule 50(b). *BE & K Construction Co. v. United Brotherhood of Carpenters & Joiners of America,* 90 F.3d 1318, 1325 (8th Cir.1996).

*Douglas Cty. Bank & Trust Co. v. United Fin. Inc.*, 207 F.3d 473, 477–78 (8th Cir. 2000). In this case, Defendant Moton does not allege that this case falls within any of those exceptions. In fact, Defendant Moton admits that his counsel "neglected to request a directed verdict on behalf of Officer Moton." (ECF No. 211). The Court further notes that the caselaw cited by Defendant Moton against the Motion to Strike is neither from the Eighth Circuit, nor do the cases involve failure to file a motion for a directed verdict prior to filing a post-trial motion for judgment as a matter of law. *See Murphy*, 914 F.2d at 187; *Cheney*, 285 F.2d at 118. Thus, based upon Eighth Circuit precedent, the Court denies the Defendant Moton's Motion for Judgment in His Favor as a Matter of Law (ECF No. 203) because Defendant Moton failed to file a motion for directed verdict before the end of the case. In turn, the Court will grant Plaintiff's Motion to Strike (ECF No. 207).

### III. Defendants John Moton and Nicholas Martorano's Motions to Alter or Amend the Judgments (ECF No. 205)

Defendants Moton and Martorano objected at trial to the submission of Plaintiff's claims for punitive damages and to the jury instructions on punitive damages. The Court overruled Defendants' objections and submitted Plaintiff's claims for punitive damages to the jury. The jury verdicts awarded punitive damages on two of Plaintiff's claims: (1) punitive damages of $200,000 on the claim against Officer Moton and (2) punitive damages of an another $200,000 on the claim against Officer Martorano. (ECF No. 190). Defendants argue that the undisputed evidence that Officer Moton used more force than was necessary. Defendants also note that Plaintiff could not identify Officer Motion and believed that all of his arresting officers were Caucasian. Defendants also claim that, although there was evidence that Plaintiff was injured by Martorano, there was no evidence that Officer Martorano acted with malice or ill will. Rather, Defendants claim that the evidence shows that Defendant Martorano acted with the amount of force necessary to deal with a fleeing suspect who refused to provide his hands to officers. Finally, Defendants argue that the punitive damages award is excessive and should be reduced by half of what the jury awarded.

In response, Plaintiff argues that Defendants have not established that they are entitled to relief under Fed. R. Civ. P. 59 because Defendants have not shown that there was a manifest error of law or fact or presented new evidence. (ECF No. 210). Plaintiff claims that he never resisted arrest but was beaten as punishment for backing away from the officers. Plaintiff contends that Defendants broke his eye socket and nose, beat him until his kidneys nearly shut down and caused internal bleeding to his brain. Plaintiff asserts that Officer Martorano hit Plaintiff in the face with a blackjack and Officer Moton beat Plaintiff with a baton while he was lying on the ground. Plaintiff states that the officers cursed at him while he was beaten, which is

evidence of malice. Plaintiff references two medical doctors who testified that Plaintiff's injuries were caused by the officers' beating of Plaintiff. Plaintiff states that he was tasered by Officer Martorano after he was already handcuffed and not resisting any way. Plaintiff claims that the punitive damages were not excessive and were a reasonable two times the total actual damages. Plaintiff contends that a 2:1 ratio is "well within the range of what courts have found to be reasonable and not excessive." (ECF No. 210 at 6).

The Eighth Circuit has specifically identified when punitive damages are permissible in a case such as this:

> Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future. *Id.* at 54, 103 S.Ct. 1625; *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others. *Coleman,* 114 F.3d at 787.

*Schaub v. VonWald*, 638 F.3d 905, 922–23 (8th Cir. 2011).

The Court agrees that Defendants have not shown a sufficient basis for altering and amending the judgment. The jury returned a verdict in favor of Plaintiff on his excessive force claims against Defendants Moton and Martorano. The jury clearly believed Plaintiff's version of events with respect to Defendants Moton and Martorano. The jury verdict reflects a finding of malice, recklessness or callous indifference to Plaintiff's right to be free from excessive force. The Court holds that there was sufficient evidence of malice, recklessness or callous indifference to support this verdict based upon the extensive injuries suffered by Plaintiff, as well as his testimony that he was beaten after he complied with the officers and after he was handcuffed. The jury also relied upon the expert witness testimony that Plaintiff's injuries were caused by the

actions of Defendants Moton and Martorano. Based upon all of the foregoing, the jury had a reasonable basis for awarding punitive damages to Plaintiff. Likewise, the Court notes that other courts have upheld punitive damages awards far in excess of a 2:1 ratio present here. *See Lee ex rel. Lee v. Borders*, 764 F.3d 966, 975–76 (8th Cir. 2014); *Ondrisek v. Hoffman*, 698 F.3d 1020, 1029 (8th Cir. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("But, 'in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'"). Plaintiff's 2:1 ratio of punitive to compensatory damages does not yet reach the 4:1 ratio that the Supreme Court has "'concluded ... might be close to the line of constitutional impropriety.'" *Ondrisek*, 698 F.3d at 1029 (quoting *Campbell,* 538 U.S. at 425). The Court denies Defendants' Motion to Alter or Amend the Judgment.

## IV. Plaintiff's Motion and Application for Fees and Expenses (ECF No. 195)

The Court first notes that Plaintiff succeeded on his §1983 claims for two out of the four defendant police officers. Plaintiff obtained an award against Defendants Moton and Martorano in the total amount of $600,000 ($100,000 in actual damages and $200,000 in punitive damages against each of those two Defendants). Plaintiff seeks a fee and expense award of $320,210.53. $290,600.00 is attributable to attorneys' time spent on the litigation, $7,712.50 is attributable to interns' time spent on the litigation, and $21,898.03 is attributable to expenses (including expert witness fees).

"When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Hensley v. Eckerhart*,

461 U.S. 424, 440 (1983)). The Court must consider the relationship between plaintiff's successful and unsuccessful claims and consider the common questions of law and fact that exist among the claims by plaintiff against the four defendants. *See Lash v. Hollis*, 525 F.3d 636, 642 (8th Cir. 2008); *Emery,* 272 F.3d at 1046 ("Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.'" (quoting *Hensley,* 461 U.S. at 435)).

Plaintiff maintains that he is the prevailing party and is entitled to attorneys' fees under §1988. Plaintiff asks this Court to award the Lodestar amount, which the number of hours spent by counsel multiplied by a reasonable hourly rate. Mr. Tatlow and Mr. Zoole's hourly rates are $450 per hour, Mr. Jeffrey Herman's (a former associate with Bollwerk & Tatlow) hourly rate is $250 per hour, and Mr. Lucas Cusak and Mr. Thomas Mihalczo's (law clerks with Bollwerk & Tatlow) hourly rates are $50 per hour. To avoid duplication of efforts, Mr. Tatlow and Mr. Zoole split their time and efforts in final trial preparation and trial time based upon whether the task was more closely oriented to the complex medical testimony and exhibits to be presented (which Mr. Tatlow focused on), or to the other liability-related civil rights issues (which Mr. Zoole focused on). (ECF No. 196 at 5-6). Plaintiff notes that Defendants had several different lawyers handling this case throughout its history, including two lawyers at trial.

Plaintiff claims that, according to his research, the result obtained is the second-largest police misconduct verdict rendered in the Eastern District of Missouri so far this century. Plaintiff asserts that the prevailing party is entitled to all the time spent, even on claims as to which there was no favorable judgment, unless the unsuccessful claims are wholly unrelated to each other. (ECF No. 196 at 6-7). Plaintiff further argues that he is entitled to his attorneys' fees because this case served the important public service job of "rooting out police misconduct[.]"

(ECF No. 196 at 8). Plaintiff also notes that counsel had several large hurdles to obtaining a favorable verdict:

- Spotless records of the officers
- Zealous representation by opposing counsel
- No criminal or departmental investigation regarding this incident
- Plaintiff had pleaded guilty to defrauding the United States
- Unfavorable SLPD police report regarding this incident.

(ECF No. 196 at 8). Finally, Plaintiff notes that, prior to trial, he had offered to settle this case for $100,000, and left open the door to settling for as little as $50,000. Defendants, however, only offered $10,000. Plaintiff claims that achieving a verdict so far in excess of the proposed settlement amount indicates the success of the case as a whole. (ECF No. 196 at 9).

In response, Defendants argues that Plaintiff's claim for attorneys' fees should be denied because he lost on all of the claims against Officers Tomlinson and Carroll. (ECF No. 197 at 1). Because Plaintiff was not the "prevailing party" with respect to Officers Tomlinson and Carroll, Defendants argue that Plaintiff is not entitled to fees for each of those claims. Moreover, Defendants assert that Plaintiff is not entitled to attorney's fees for Plaintiff's claims against the ten other defendants that he sued in his Complaint and Amended Complaint (ECF No. 197 at 5-6). In addition, Defendants criticize Plaintiff for not providing any time and expense records to support counsel's request for fees. (ECF No. 197 at 7-9). Defendants assert that they cannot tell from counsel's submission how much time was expended on claims against Moton and Martorano; how much time was spend pursuing claims against other defendants; how much time was wasted; how much time was duplicative; and how much time was compensable.

After Defendants filed their opposition, Plaintiff supplemented his Motion for Attorney's fees and provided a detailed record of each person's time spent on the case for the Plaintiff. (ECF No. 198). Plaintiff also provided a Reply Memorandum In Support of Motion and Application for Fees and Expenses. (ECF No. 200). Plaintiff pointed out that Defendants did not contest (1) the validity and reasonableness of the asserted hourly rates, (2) the inclusion of law clerks as hourly billers, (3) the reasonableness of the expert witness fees and all other costs/expenses sought, (4) the reasonableness of having several people work on the case and of having two lawyers preparing for and trying the case, (5) that Defendants defended zealously, and (6) this case presented an important issue and its result in pointing out substantial police misconduct is a great public service. (ECF No. 200 at 1-2). Plaintiff claims that Defendants' objections to the attorneys' fees award is based upon the faulty premise that the time devoted to claims other than those against Defendants Matrorano and Moton are not compensable. Plaintiff claims that the prevailing party is entitled to fees incurred with respect to unsuccessful claims unless the other claims were "distinct in all respects" from the successful ones. (ECF No. 200 at 2 (citing *Hensley*, 461 U.S. at 440)). Plaintiff maintains that the claims in this case are interrelated and arose out of a "common core of facts." Although Plaintiff contends that the each of the four officers used different kinds of excessive force, Plaintiff maintains that Defendants have failed to establish how these claims could be "wholly distinct" from each other for purposes of excessive force.

Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, 130 S. Ct. 1662, 1671, 176 L. Ed. 2d 494 (2010). The "'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Perdue*, 559 U.S. at 551.

The "lodestar" is calculated by determining the number of hours reasonably expended multiplied by the applicable hourly *market* rate for the relevant legal services. The rate is determined by reference to the marketplace. The hours reasonably expended are determined by reviewing the records submitted by counsel, verifying the accuracy of the records, and then deducting excessive, redundant, or otherwise unnecessary work. The lodestar also must be reduced if success is only partial. "Partial success" refers to the failure to win on all claims when the claims and relief are separate. In such a case, a fee is not awarded for work on the unsuccessful claims; that is, all hours attributed to the discrete claim are disregarded.

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) (en banc); *see Hensley*, 461 U.S. at 436, 103 S.Ct. 1933 ("[T]he product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."). Clearly, Plaintiff was the prevailing party in some respects because he obtained a $600,000 judgment against Defendants Moton and Martorano. However, this evaluation is difficult in a case such as this where Plaintiff was successful against some, but not all of the defendants, and where Plaintiff settled his claims against other defendants. "[T]he lodestar amount may be excessive if the plaintiff ultimately achieved only partial or limited success on his claims as a whole." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1096 (E.D. Mo. 2011) (citing *Hensley*, 461 U.S. at 436).

As an initial matter, Defendants also have not argued that Plaintiff's claim for expenses in the amount of $21,898.03 should be reduced. The Court, therefore, will award Plaintiff those expenses without any reduction. The Court also notes that Defendants have not challenged

Plaintiff's counsel's hourly rate, expenses (including expert witness fees), or the quality of Plaintiff's representation.

However, the Court believes that Plaintiff has requested fees in excess of those that should be permitted under Section 1988. First, the Court does not believe that the claims of all of the officers is so intertwined that there should not be any reduction based upon Plaintiff's lack of success against some of the officers. The Court understands that some discovery, particularly with respect to the nature and extent of Plaintiff's injuries might involve the same common core of facts. However, the jury clearly was able to differentiate between the actions of Defendants Moton and Martorano and Defendants Tomlinson and Carroll. The jury evaluated the distinct and particular force used by each individual defendant to determine whether such force was excessive under the circumstances. Because the claims litigated at trial were, to a certain extent, distinct acts by four separate officers who were not found liable for the actions of each other, the Court holds that a twenty percent fee reduction of Plaintiff's requested attorneys' and intern fees is appropriate based upon counsel's limited success at trial.

The Court further notes that there are several entries where time recorded is excessive. *See Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1094 (E.D. Mo. 2011) (noting excessive time billed). For example, Mr. Herman spent 7.5 hours working on and revising the proposed scheduling order in October 2014; Mr. Tatlow charged .75 hours to review and revise the Joint Scheduling Plan on October 15, 2014; Mr. Herman spent 4.0 hours researching and drafting a motion to compel against the City of St. Louis; Mr. Zoole charged .3 hours for draft, review, proofread, and file Entry of Appearance on December 1, 2015; Mr. Zoole charged .2 hours for reading A. Haywood's entry on December 8, 2015; Mr. Zoole charged .8 hours for travel to and from B. Luepke's office for a deposition on May 17, 2016. Plaintiff also has included charges

that are irrelevant to Plaintiff's claims against these individual defendants. For example, Mr. Tatlow charged 4.75 hours reviewing and responding to the motions to dismiss of the City and Corizon in July and August 2014; Mr. Herman spent 1.5 hours reviewing the City of St. Louis' supplemental response on November 24, 2015; Mr. Tatlow charged .25 hours for a call with Plaintiff regarding Corizon; Mr. Tatlow charged 1.0 hours to review the respond to the Police Board's Motion for Summary Judgment; Mr. Zoole charged 2.0 hours to read summary judgment motions, memoranda, statement of uncontroverted material facts, and supporting exhibits of the Police Board Defendants, the City of St. Louis, and the Corizon (City Jail Infirmary) Defendants on January 27, 2016; Mr. Zoole charged 1.0 hours for cite-checking and researching the Police Board Defendants' and City's summary judgment motions and memoranda on January 31, 2016; Mr. Zoole charged .5 hours to prepare and file Motion to Voluntarily Dismiss City and Police Board Defendants; Mr. Zoole charged .4 hours for a telephone conference from O'Sullivan and Haywood on February 26, 2016. The Court holds that the claims against the Police Board, the City of St. Louis, and Corizon defendants are distinct from Plaintiff's claims against the individual defendants who went to trial. The theories of liability against the other defendants required different factual and legal proof than the claims against the individual officers. Therefore, the Court holds that Plaintiff cannot seek compensation for any time spent prosecuting, litigating or settling those claims. Thus, based upon the excessive time charged and the time charged for claims against other, unrelated defendants, the Court will reduce Plaintiff's attorneys' and intern fees by an additional twenty-five percent.

The Court nevertheless recognizes that Plaintiff achieved victory in this case, "no small feat for a civil-rights plaintiff." *Ladd*, 783 F. Supp. 2d at 1096. For all of these reasons, the

Court concludes that a reduction in the number of hours claimed—as outlined above—is warranted. *Ladd*, 783 F. Supp. 2d at 1095. Rather than make a line-by-line cut to account for these issues, the Court will exercise its discretion to make a percentage reduction. *See, e.g., Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 202 F.3d 1035, 1039 (8th Cir.2000) (affirming percentage reduction based on, *inter alia*, "excess hours[ ] and duplication"). The Court will reduce Plaintiff's requested attorneys' fee award in the amount of forty-five percent. The court finds this fee is appropriate, even in light of the zealous and professional representation Plaintiff received, because, after all, this litigation culminated in only a three-day jury trial. *Rural Water Sys. No. 1*, 38 F. Supp. 2d at 1067.

Therefore, the Court will award Plaintiff his $21,898.03 in expenses. In addition, the Court will award Plaintiff fifty-five percent of his requested attorneys' fees, of $164,071.88. The Court makes a total award of $185,969.91 to Plaintiff pursuant to Section 1988.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion and Application for Fees and Expenses (ECF No. 195) is **DENIED**, in part, and **GRANTED**, in part. The Court awards Plaintiff **$185,969.91** in fees.

**IT IS FURTHER ORDERED** that Defendants John Moton and Nicholas Martorano's Motion for a New Trial (ECF No. 201), Motion of Defendant John Moton for Judgment in His Favor as a Matter of Law (ECF No. 203), and Defendants John Moton and Nicholas Martorano's Motions to Alter or Amend the Judgments (ECF No. 205) are **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Strike (ECF No. 207) is **GRANTED**.

Dated this 14th day of October, 2016.

                                                               */s/ Ronnie L. White*
                                                    **RONNIE L. WHITE**
                                                    **UNITED STATES DISTRICT JUDGE**